WELTE & SONS *v.* UNITED STATES (No. 1273).[1]

MUSIC ROLLS FOR SELF-PLAYING INSTRUMENTS.
     These music rolls are made for a player piano known as the Welte Mignon. This instrument can be used as an ordinary piano and it is equipped for the mechanical production of music. These rolls are essential to the use of the instrument as a player piano and are therefore parts of the instrument.

United States Court of Customs Appeals, February 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33565 (T. D. 33738).

[Affirmed.]

*Brown & Gerry* for appellants.
*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Leland N. Wood*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:
     Wooden rolls wound with perforated paper especially prepared and designed for the mechanical production of music were classified by the collector of customs at the port of New York as parts of musical instruments and were therefore assessed for duty at 45 per cent ad valorem under that part of paragraph 467 of the tariff act of 1909 which reads as follows:

467. Musical instruments or parts thereof, pianoforte actions and parts thereof, * * * forty-five per centum ad valorem.

The importers protested that the rolls wound with perforated paper were either music in sheets dutiable at 25 per cent ad valorem under paragraph 416 or manufactures of wood or of paper dutiable at 35 per cent ad valorem either under paragraph 215 or paragraph 420 of said act.
     Paragraphs 215, 416, and 420, in so far as pertinent, are as follows:

215. * * * Manufactures of wood or barks, or of which wood or bark is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem.
416. Books of all kinds, * * * music in books, or sheets, * * * wholly or in chief value of paper, and not specially provided for in this section, twenty-five per centum ad valorem. * * *
420. Manufactures of paper, or of which paper is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.
     The goods are made for a certain style of "player piano" known as the Welte Mignon. The Welte Mignon is equipped and may be used as is the ordinary piano, but differs from the latter in that it is

---
[1] Reported in T. D. 34249 (26 Treas. Dec., 407).

furnished with a device designed for the mechanical production of music. This device or piece of mechanism is supplied with attachments to receive and hold in place wooden rolls with their corresponding musical records, and the rolls, apparently constructed on the principle of the window-shade roller, are provided with pivots and sockets suitable for such attachments. The attachments, pivots, and sockets have no other purpose than to make the rolls a part of the mechanism and so fit it for immediate use. When the Welte Mignon is used as a player piano the perforated paper record is mechanically unwound from the roll and is passed over a contrivance containing openings of a width corresponding to that of the perforations on the paper. The uncovering of the various openings of the contrivance by the perforations of the record applies the pneumatic force which strikes the proper notes and thus produces the musical selection for which the perforated record was made. On the hearing before the board the importers seem to have relied on the claim that the merchandise in controversy was music in sheets. No such claim, however, was made in the briefs or on oral argument of the appeal, and we think we are justified in concluding that that particular ground of protest has been abandoned. By both brief and argument, however, the importers insist that the goods imported are not parts of musical instruments, but mere accessories of the piano and therefore dutiable either as manufactures of wood or manufactures of paper.

In support of this contention it is pointed out that the wooden rolls with their corresponding records are not an essential part of the Welte Mignon piano and that that instrument is not dependent upon such rolls or records for the production of music. That the Welte Mignon may be used as an ordinary piano and that it will continue serviceable as a musical instrument without regard to the rolls may be admitted. It can not be admitted, however, that the rolls are not essential to the use of the instrument as a "player piano." Indeed, without the rolls and records the mechanical device which gives the Welte Mignon the status of a "player piano" would be rendered utterly worthless, and the instrument, deprived of the special feature which makes it valuable for the mechanical production of music, would become no better than an ordinary piano.

The line between that which constitutes a part of a mechanical device and that which is merely supplementary or accessory to it is sometimes quite narrow and difficult to distinguish, but in this case we think it perfectly clear that although the rolls are not necessary parts of the Welte Mignon considered as an ordinary piano, they are essential constituents of the mechanism which makes it a player piano and are therefore parts of the instrument. Moreover, the tariff pro-

vision for parts of musical instruments has, in our opinion, received a judicial interpretation which has met the approval of Congress and which is broad enough to cover goods of the character here involved. Parts of musical instruments were first provided for by paragraph 326½ of the tariff act of 1894, and under that paragraph sheets or rolls of perforated paper designed to be used in mechanical pianos for the production of music were held not to be manufactures of paper, but parts of musical instruments. *In re* Hempstead & Co. (T. D. 16843).

 This decision was followed by paragraph 453 of the tariff act of 1897, in which musical instruments or parts thereof were provided for in almost the identical language employed for a like purpose by paragraph 326½ of the act of 1894. Under paragraph 453 certain varnished heavy cardboard strips, perforated with rectangular holes of uniform width and used in orchestrions for the production of music by pneumatic power, were classified as parts of musical instruments and assessed for duty at 45 per cent ad valorem. The importers claimed that the goods were dutiable as music in sheets. The Board of General Appraisers held that this claim could not be sustained, and that the perforated cardboard strips, although detachable, were parts of the musical instrument for which they were designed, inasmuch as they were essential to its use for the mechanical production of music. *In re* Pollmann (T. D. 24803).

The language by which provision was made for musical instruments or parts thereof in the acts of 1894 and 1897 was preserved in paragraph 467 of the tariff act of 1909, and from that we must conclude that Congress saw no reason for changing a classification to which the board had adhered for a period of nearly 15 years, and that therefore it approved the ruling that records for the mechanical production of music constituted parts of the musical instruments for which they were made.

This court held that the records of gramophones, graphophones, and phonographs were parts of such machines within the meaning of paragraph 468. American Express Co. *et al. v.* United States (4 Ct. Cust. Appls., 279; T. D. 33490). As the relation of the metal or composition record to the gramophone, graphophone, phonograph, or other device for the reproduction of vocal and instrumental sounds does not materially differ from that of the perforated paper record to the player piano, we think that the principles enunciated in that case are applicable to the present controversy and decisive of the issues here involved.

The decision of the Board of General Appraisers is *affirmed.*