UNITED STATES *v.* AMERICAN STEEL & COPPER PLATE CO.
(No. 2716)[1]

ENTIRETIES—PARTS OF PHOTOGRAPHIC CAMERAS—GLASS PHOTOLITHOGRAPHIC SCREENS.

Whether or not an article is part of another depends upon whether or not it is essential to the use of the other. Glass photolithographic camera screens, being shown to be necessary to such use of a camera, are parts of photographic cameras, under paragraph 1453, Tariff Act of 1922, and not glass articles under paragraph 218. That cameras may be used for taking pictures without such screens does not affect the question; nor does the fact that such screens are largely used without cameras.

United States Court of Customs Appeals, May 22, 1926

APPEAL from Board of United States General Appraisers, G. A. 9058, T. D. 41190

[Affirmed.]

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument May 12, 1926, by Mr. Carter and Mr. Brown]

Before SMITH, BARBER, BLAND, and HATFIELD, Associate Judges; GRAHAM, Presiding Judge, participating in the decision by consent of counsel

GRAHAM, Presiding Judge, delivered the opinion of the court:

The goods imported in this case are technically known as half-tone screens. They were classified and returned for duty as articles not specially provided for, composed wholly or in chief value of glass, at 55 per centum ad valorem, under paragraph 218 of the Tariff Act of 1922. They were claimed to be dutiable, in the protest, at 20 per centum ad valorem, as parts of photographic cameras, under paragraph 1453 of said act, or, in the alternative, as manufactures of glass, not specially provided for, at 50 per centum ad valorem, under paragraph 230 of said act. The court below sustained the protest, holding the goods to be dutiable as claimed under said paragraph 1453, and the Government appeals.

The articles imported are in various sizes, three, as shown by the consular invoice, being circular, and the remainder varying in size from 10 by 12 to 18 by 22 inches. In making these screens, a piece of transparent glass of the required size is marked with a ruling machine on one side by a series of straight, parallel lines, which, in the articles imported here, vary from 50 to 150 lines per inch. These lines are then etched in and filled with a black substance. Another piece of glass of like size and kind is then similarly treated, with the lines in the opposite direction. These two plates of glass are then cemented together with balsam, the lined surfaces being inside. As thus prepared, the plates have a darkened appearance and present

[1] T. D. 41673.

to the eye, when viewed through a microscope, a series of small squares. When prepared for use, the larger sized screens have some sort of binding around the edges.

. These articles are used in making reproductions of photographs for printing purposes, either in newspaper or other publications, and in other photolithographic and photo-engraving work. The testimony shows they are used in two ways, first, in conjunction with a photographic camera, and, second, in a printing frame. When used in a camera, the screen is inserted in a special holder and focusing arrangement therein by which the screen can be moved to its particular focus, according to the wish of the operator, this holder, and the screen carried by it, being between the camera lens and the sensitive plate upon which the photograph is to be taken. These screens can be used in conjunction with any photographic camera which has the special holder and focusing arrangement above referred to, but without such equipment can not be so used. Any camera in which such a screen is used may, by removing the screen, be used for ordinary photographic purposes, but a camera to be used for reproducing purposes must contain such a screen.

It is also shown that reproduction cameras are commonly sold on the market and are in common use by photolithographers and others engaged in reproduction work.

The purpose of the screen, wherever used, is as described by the witness Pitman:

A. It breaks up the picture into so many minute little squares, the purpose of which is that the negative is printed on a sensitized piece of copper, developed, and then placed in perchloride of iron, and that eats the picture in, by the means of eating down in these little cross lines into the copper, so it can be used as a printing plate.

When used in a printing frame, the screen is first placed in the frame, upon this is superimposed a glass photographic negative, and upon this is placed the plate upon which the reproduction is to be made, which has been prepared with a sensitized surface, placed in apposition to the negative. The frame is then locked and exposed to light. In some cases it is necessary to place a strip of glass of proper thickness between the screen and negative to properly focus the screen.

The testimony shows that for 25 years or more it has been customary in the trade to use screens similar to those now before us in conjunction with reproducing cameras. It also appears that this was the exclusive method of using them until a period approximately 12 years before the protest herein. On October 30, 1912, one J. A. H. Hatt made application for a patent upon a process for using such screens in a printing frame and without a camera, upon which application a patent was duly issued April 6, 1915. From that time to the time of hearing in the court below, the testimony shows the use of

the printing-frame method gradually grew in favor, until at the time of hearing a very considerable part of the reproduction work done with such screens was done without a camera. The major portion thereof, however, is being done, as before, with reproducing cameras containing such screens.

The relevant portions of the paragraphs of the Tariff Act of 1922 are as follows:

218. * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, or combinations of glass and paste, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 55 per centum ad valorem;

1453. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem;

Counsel for appellant contend that the screens involved here can not properly be held to be parts of photographic cameras, because they are shown by the record to have a well-known and clearly defined use aside and apart from such cameras; that the use of such articles, to bring them within such classification, as parts of photographic cameras, must be an exclusive use. In support of this contention, several authorities are cited, which shall be referred to briefly. In the case of *Sears, Roebuck & Co.*, 27 Treas. Dec. 627, tripods were held not to be parts of cameras; in *Schoverling* v. *United States*, 142 Fed. 302, rubber recoil pads for guns were held not to be parts of guns; in the *Sears, Roebuck & Co.* case, 29 Treas. Dec. 343, small levels used in setting a camera were held not to be parts of cameras; in the *Gallagher & Ascher* case, 34 Treas. Dec. 608, camera cases were held to not be parts of cameras; in the case of *Mead Cycle Co.*, 28 Treas. Dec. 389, cycle lamps, pump clips, pumps, push bells, and tool bags were held to be accessories and not parts of bicycles. In G. A. 6855, 17 Treas. Dec. 46, certain chime mechanisms imported separately, were held not to be parts of clocks; and in *United States* v. *Kalter Mercantile Co.*, 11 Ct. Cust. Appls. 540, certain straps, complete in themselves, were held not to be parts of rubber boots, with which they were imported.

An examination of these cases will disclose, we think, that the controlling feature in each of the cases cited was a consideration of the question whether the particular articles imported were, or were not, essential to the operation or use of the particular thing of which they were said to be parts, and, in the absence of which the thing in question was not capable of the use for which it was intended. In each case cited, the article involved was entirely able to function and perform its original purpose without the thing imported.

But when the thing imported is essential to the functioning and use of the article of which it is said to be a part, a much different condition arises.

In *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, this court had under consideration certain wooden rolls wound with perforated paper, used with mechanical pianos. They were classified as parts of musical instruments. It was there pointed out that the pianos in question could be played as an ordinary piano, but that as mechanical pianos they could not function without the rolls in question. Being thus essential to one kind of musical instrument, they were held to be properly classified.

In *Durbow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 177, certain steel shuttles chiefly used in embroidery machines, but essential operating parts of sewing machines, were held to be properly classified as parts of sewing machines. It will be observed that here the court did not dispose of the matter with reference to the chief use of the articles imported, but based its judgment solely upon the essential character of the importations as parts of sewing machines.

Again, in *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, certain automobile lamps and horns were involved. The testimony showed they were used on automobiles and, to some extent, on motor boats. The court, after reviewing the authorities, held the articles in question to be parts of automobiles, stating, in part:

We think lamps and horns are essential and necessary parts of automobiles and that automobiles can not be efficiently, safely, or properly operated without them.

We call attention, also, to the case of *American Steel & Copper Plate Co.*, Abstract 46545, 44 Treas. Dec. 476, where merchandise identical with that at bar was involved, under the provisions of paragraph 380 of the tariff act of October 3, 1913.

The court said:

It was evident from the testimony that the merchandise in question is an essential part of the reproduction camera. It was held that Congress in providing in paragraph 380 for photographic cameras and parts thereof generally, did not specify any particular kind of photographic camera or parts and it was to be presumed that they intended this paragraph to cover all varieties of photographic cameras and parts thereof.

It is shown by the record before us that reproduction cameras are photographic cameras and that the screens in question are essential parts of these cameras and without which they can not function as such. They are, therefore, properly dutiable as parts of photographic cameras under said paragraph 1453.

The judgment of the court below is *affirmed*.