UNITED STATES *v.* G. W. SHELDON & Co. (No. 3734)[1]

[1] T. D. 46913.

United States Court of Customs and Patent Appeals, February 12, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Richard E. Fitzgibbon*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument December 12, 1933, by Mr. Lawrence and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The collector at the port of New York classified certain merchandise, imported from Germany, under paragraph 397 of the Tariff Act of 1930 as manufactures of metal and assessed duty thereon at 45 per centum ad valorem.

The importer protested the collector's said classification and assessment of duty, and claimed the merchandise dutiable under paragraph 372 of the same act at 27½ per centum ad valorem as parts of machines, not specially provided for, or under paragraph 319 (b) of the same act at 35 per centum ad valorem, or under paragraph 353 of the same act at 35 per centum ad valorem.

The United States Customs Court sustained the protest and held the merchandise dutiable at 27½ per centum ad valorem under said paragraph 372 as parts of machines, not specially provided for. From the judgment of the Customs Court, the Government has appealed to this court.

The importation consists of 22 special or high-pressure valves, entered at the value of $2,617.82, 88 needle valves, entered at the value of $500.22, and 12 valve elongations or extension rods valued at $335.86, all of metal. The imported articles are specially designed for use in and are a part of a complicated machine or apparatus which manufactures or produces synthetic anhydrous ammonia. The machine has a base of between 100 and 150 feet, and is driven by an electric motor. Hydrogen and nitrogen gases are fed into the machine in proper proportions and go into a compressor where the pressure is built up to approximately 1,000 pounds. The gas is then circulated through pipes and valves and through certain other vessels, one of which is called a converter. In one of the chambers, the converter, there is a catalyst which is a chemical substance. The two gases under pressure pass over the catalyst at certain temperatures where the gases combine to form ammonia. As the mixture is cooled, it passes out in the form of a liquid and the gases that are not converted into ammonia pass back through other pipes and valves to the original compressor.

It is essential in the process that the pressure be built up to about one thousand pounds. This is done with the aid of the large pressure valves imported. The pressure in the machine could not be regulated without the use of said valves. The needle valves are located at various places in the machine so as to enable the operator of the machine to draw samples from the various portions thereof at various times. The drawing of the samples at frequent intervals and at various places is highly important in order that the said pressure may be properly controlled and that the machine may be so operated as to produce the ammonia as heretofore indicated. The elongations are extension rods containing a wheel for opening and closing the valves. The proof is positive that the imported merchandise was particularly designed for the above purposes and was imported for use in a particular machine which was put into commercial use.

The Government contends that the valves are complete articles within themselves and are not parts of the machine and are dutiable as manufactures of metal under the decision of this court in *United States* v. *Klingerit, Inc.*, 17 C.C.P.A. (Customs) 472, T.D. 43931. The appraiser in describing the merchandise and returning the same for duty called attention to "T.D. 43931 on valves." The Government has made no contention that they were dutiable in any other paragraph in said tariff act than in paragraph 397.

We think that under well-settled authorities the entire importation is described and properly dutiable as parts of machines, not specially provided for, at 27½ per centum ad valorem under paragraph 372, as claimed by the appellee, and as was held by the trial court. The proof is clear not only that they are parts of a particular machine, although they were imported separately from the machine, but that they are necessary and essential parts for the completion of the machine. and that the machine could not function as such machine without such parts. *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872; *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434. There is no question in this case but what the article into which the importation merges and becomes a part is a machine for manufacturing ammonia.

In *United States* v. *Bosch Magneto Co.*, *supra*, automobile horns and lamps were held to be parts of automobiles. It was there said:

We think lamps and horns are essential and necessary parts of automobiles and that automobiles can not be efficiently, safely, or properly operated without them. Even if we were to adopt the test made in certain cited cases where, if the use is optional, it is not "a part," we would not regard our views in this case as in conflict with decided cases, since it is a matter of common knowledge that the use of lamps and horns is not optional if the operator of the machine operates it in a safe, efficient, and proper manner. The machine could be operated without

mud guards, without tires, and without a wind shield, and yet it is obvious that they are necessary and generally required if the machine is to be operated in its usual manner. To operate an automobile without lights would certainly limit it to day operations, and the use of a horn or some other sounding device is usually so essential to the safety of the operator of the car and to the public in general as to make its use almost indispensable.

We do not regard it as necessary to discuss in detail the decision relied upon by the Government, *United States* v. *Klingerit, Inc.*, *supra*, since in that case the question as to whether a valve was *part* of a machine was not presented.

We think the trial court properly held the importation to be dutiable as parts of machines, not specially provided for, as claimed by the appellee, and the judgment of the United States Customs Court is *affirmed*.