RALPH C. COXHEAD CORP. *v.* UNITED STATES (No. 3711)[1]

United States Court of Customs and Patent Appeals, April 30, 1934

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument February 14, 1934, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain calculating machines, imported at the port of New York, were, by the collector, classified under paragraph 353 of the Tariff Act of 1930, and assessed with duty at 35 per centum ad valorem.

---

[1] T. D. 47080.

The importer protested the said classification and assessment of duty, and claimed the merchandise to be dutiable at 27½ per centum ad valorem as "all other machines" under paragraph 372 of said act.

The United States Customs Court overruled the protest, and from its judgment this appeal is taken.

Paragraph 353 reads as follows:

PAR. 353. All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic and X-ray apparatus, instruments (other than laboratory), and devices; and

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

The competing provision in paragraph 372 is as follows:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem.

The importation involved consists of several calculating machines all of one type, which, when imported, were in a knock-down condition. Illustrative Exhibit A is a photograph of one of the machines, after being assembled in this country. The machine is somewhat similar in size and appearance to a typewriter, having numerous keys and buttons which are touched or pressed during operation. It multiplies, adds, subtracts, and divides. Illustrative Exhibit B shows the bottom of the machine, and was introduced for the purpose of showing the position and manner of connection of the electric motor which furnishes the power for operating the device. The motor is small, and spherical in shape, and is compactly fitted into the bottom of the machine and is closely associated with the various metal parts of the same.

Both parties hereto claim that the decision in this case is ruled by the decisions of this court on the subject of what constitutes entireties for tariff purposes. The importer relies upon *United States* v. *Kronfeld, Saunders, Inc.*, 20 C.C.P.A. (Customs) 57, T.D. 45679, and *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 C.C.P.A. (Customs) 367, T.D. 46132, and contends that it is shown by the record that the imported machines will function either with or without the use of a motor, and that the motor is not an "essential element" of the machine, and that, therefore, the machines imported must not be regarded as entireties, and that they are severable for duty purposes. There was no claim made by appellant in the protest that the machines were severable for duty purposes.

The Government contends that each of the machines must be regarded as an entirety under the decisions of this court, and that the motor is an essential feature in each machine. It is also stated by the Government, in its supplemental brief, that the context of paragraph 353 compels the classification of the machines at bar thereunder, regardless of any general rule relating to entireties. On the question of entireties, the Government cites *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232; *Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 108, T.D. 41591; *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46831; *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249, and other decisions by this court. The Government also cites decisions of the United States Customs Court as follows: *United Sales Co.* v. *United States*, T.D. 46360, 63 Treas. Dec. 722; and *Century Machine Co.* v. *United States*, Abstract 24540, 64 Treas. Dec. 753.

It is not disputed in this case, except as is hereinbefore mentioned, that the articles at bar are machines, and would be dutiable under the quoted provisions of paragraph 372, *supra,* if they were not more specifically provided for in paragraph 353, *supra.*

Paragraph 353, *supra,* is a new provision to tariff legislation. In order that we may properly interpret the portion of the same which is here under consideration, it becomes quite important that we review its legislative history with a view of ascertaining what Congress sought to accomplish by this new paragraph. The importance of considering such legislative history and our reasons for so doing will become more apparent later in this opinion.

Paragraph 339, of the Tariff Act of 1922, which provided for "Table, household, kitchen, and hospital utensils [etc.]", contained the following language: "and in addition thereto, upon any of the foregoing articles containing electrical heating elements as constituent parts thereof, 10 per centum ad valorem." Also in paragraph 372, of the Tariff Act of 1922, was a provision for "all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem." When the Tariff Act of 1930 was being considered by the Committee on Ways and Means of the House of Representatives, the National Electrical Manufacturers Association appeared before the Committee and asked for a change in wording in the new act which would bring about the classification of certain electrical products at a different rate of duty than was required under certain rulings of the United States Customs Court and of this court. It was pointed out to the Committee that, prior to the passage of the Tariff Act of 1922, the majority of imported electrical products were classified under the catch-all clause of the metal schedule; that in the metal schedule under the Tariff Act of 1922, paragraph 399 provided for a duty of 40 per centum ad valorem upon articles of certain metals, and that this paragraph was intended to be the catch-all paragraph for

electrical products, and that in the case of *Simon, Buhler & Baumann, (Inc.), v. United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, this court had used certain language with reference to what constituted a machine which required that many of the electrical articles which would have found classification in paragraph 399 be brought into that portion of the machine paragraph, 372, above referred to, at a rate of duty of 30 per centum ad valorem. It was proposed that the committee modify its new machine paragraph, 372, by inserting therein certain provisions relating to electrical devices and by making such devices bear a duty of 40 per centum ad valorem. See Hearings Before the Committee on Ways and Means, House of Representatives, Seventieth Congress, second session, volume III, page 2071.

The Committee, however, wrote into H.R. 2667, a new paragraph (353), covering said electrical articles. The bill was passed by both houses and approved by the President with the paragraph as originally written remaining substantially unchanged. Amendments were offered and rejected in the Senate. In reporting the bill to the House, the Committee on Ways and Means had the following to say:

### ELECTRICAL MACHINERY AND APPARATUS

The products of this important group of industries are now dutiable under two paragraphs. Transformers, wiring devices, control apparatus, etc., are assessed at 40 percent as manufactures of metal, n.s.p.f. under paragraph 399, whereas generators and motors, which are more expensive and difficult to manufacture and more susceptible to competition, are assessed at only 30 percent as machines, n.s.p.f. under paragraph 372. Furthermore, litigation over the meaning of the term "machine," as applied to electrical equipment, has resulted in transferring some products to the machinery paragraph and leaving similar products classified under paragraph 399. *The industry is of such importance that separate classifications of its products are warranted, which is done by this bill.* (Italics ours.)

When the Committee on Finance reported said bill to the Senate, it referred to paragraph 353 and used the following language:

### PARAGRAPH 353

Electrical machinery and apparatus is now dutiable chiefly under several paragraphs, as follows: Paragraph 372 as machinery, paragraph 399 as miscellaneous manufactures of metal, paragraph 368 as meters, and paragraph 339 as household utensils. Litigation over the meaning of the term "machine" as applied to electrical equipment has resulted in transferring some products to the machinery paragraph and leaving similar products classified under paragraph 399. In many cases the more highly manufactured articles have thus been subjected to the lower rates, and in other cases products of similar character have been declared dutiable at different rates. All these products, with the exception of such as are household utensils, lighting fixtures, or laboratory instruments, are now grouped together at a single rate.

The insertion of the words "other than laboratory" after the provision for electrical instruments is to avoid conflict with the provision for laboratory instruments in paragraph 360.

Certain types of electrical meters contain a clock, which drives a drum or disk. Such clockwork mechanisms, usually not made by the electrical firms are made

dutiable separately as clocks under paragraph 368. Simple trains of small gears, used in other types of meters, remain as integral parts of the electric meter, and are meant to be dutiable therewith.

It is not intended that this paragraph should include lighting fixtures, provided for in paragraph 387 of the House bill, and eliminated therefrom by the Senate committee.

In referring to paragraph 368, the so-called "clock" paragraph, the report of the Committee on Finance of the Senate also referred to electrical devices and used the following language:

### PARAGRAPH 368—CLOCKS

Subparagraph (a): Phraseology is added specifying the value of synchronous and subsynchronous motors to be dutiable hereunder at not more than $3 each, exclusive of the value of gears or other attachments. The intention is to retain in this paragraph all motors used to drive ordinary electrical clocks, and to transfer to paragraph 353 synchronous motors of less than one-fortieth horsepower, such as are used in time switches and other electrical devices containing some form of clockwork mechanism.

Striking out the words "or electricity" is for the purpose of transferring electricity meters to paragraph 353 for assessment thereunder. The words "and the clockwork mechanism contained in any electrical device" are inserted for the purpose of retaining in this paragraph any clockwork mechanism which may be incorporated in any electrical device. The clockwork mechanisms are intended to be assessed separately hereunder, while the electrical devices minus the value of the clockwork mechanisms are intended to be assessed under paragraph 353.

Certain changes in paragraph 353 in the House bill, made by the Senate, were removed from the bill before its passage and the provisions which are here under consideration are substantially as they were when the bill was passed by the House.

The first provision in paragraph 353 "all articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy" uses, in part, the language in the *Simon, Buhler & Baumann* case, *supra*, which had been called to the attention of Congress as aforesaid. The second provision mentions specifically certain instruments or devices not involved here. The language of the third provision is quite broad: "articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs." It will be noticed that that portion of the paragraph is limited to articles having "as an essential feature an electrical element or device, such as [etc.]."

In order to come under this particular provision of the paragraph the importation must consist of an article containing, as an *essential feature*, an electrical element or device. Congress has given specific examples of articles which contain electrical elements or devices as essential features thereof. In determining whether an imported article contains such an electrical element or device as an essential feature we should consider the examples which Congress has given.

When we consider the examples given, in trying to arrive at the meaning of the term used by Congress, difficulty is encountered by reason of the fact that the specific examples mentioned are articles differing vastly in their construction and uses. For instance, motors and washing machines are mentioned. Electric washing machines, as far as we are advised, operate by motor, and, no doubt, the motors in most electric washing machines are essential features in that kind of washing machine. It is also clear that there is an electrical element or device which is an essential feature in the motor which is in the washing machine. The examples given would indicate, therefore, that Congress intended to bring within that provision a great number of articles which, in many respects, differed vastly in their use and construction.

From a consideration of all the foregoing, it seems obvious that Congress, by its enactment of paragraph 353 intended to take from the said machine paragraph certain articles which would otherwise have been dutiable there, and also intended to gather into paragraph 353 articles which might otherwise find classification in paragraph 397 and elsewhere in the act. It is, also, clear to us that Congress was solicitous that electrical articles of certain kinds (some of which were definitely named) should be assessed with a higher rate of duty than was provided for in the machine provision quoted.

In view of the legislative history and the context of paragraph 353, we are of the opinion that any article which has as an essential feature an electrical element or device constituting the article, an electrical article is dutiable, as an entirety, under the third provision of paragraph 353, and we find no warrant for the conclusion that Congress intended that the motor in such an article should be made separately dutiable from the remainder of the article.

In the court below, the Government took the position that the calculating machine at bar should be classified under paragraph 353 since, as imported, it contained an electric motor. It is true that counsel representing the Government also stated that if the machine were to be operated in any other way than by electric motor, certain modifications would be required. We cannot read out of the provision the term "having as an essential feature" and we must give it some effect. We think Congress, by that term, meant that the motor or the electrical feature of the article must be essential to the operation of the article and that if the article was so designed and constructed that it could normally operate in two ways, both by electrical power and by hand power, interchangeably, it would not be an electrical article and the electrical element or device would not be an *essential element or device*. If, however, the article was so designed and constructed as to be operated normally by means of the electrical element, the fact that it might be operated by hand in emergencies or at such times as when the motor would be broken or out of repair,

would, in our opinion, not destroy its inherent electrical character and remove it from the paragraph. The motor would not be an essential element of a calculating machine if the machine as imported was so designed and constructed that it might, without substantial modification, be interchangeably operated by hand or by electrical power.

What we have said above with reference to a motor being an essential element of a machine is directed to the question of determining when its operation by any power other than electrical may remove it from the electrical paragraph. We can also understand how an electrical motor might be so connected with the machine or operated in connection with it that its purpose and use would be so trivial and unimportant to the machine as to render it an *unessential* element in the machine. As we understand the issues here, this principle is not involved in the decision of this case.

In the light of the above understanding of what Congress intended by the paragraph, we now proceed to examine the record in the case at bar. It is our view that when the testimony was taken and the importer attempted to prove the mode of operation of the calculating machines at bar, the trial court excluded certain testimony which the importer seemed to be prepared to present and which probably would have shown more definitely the particular characteristics, mode of operation, and modifications (if any) which were required for hand operation, all of which facts would have been of great assistance in the decision of the case in accordance with the principles above stated.

In order that the situation confronting the trial court and the litigants at the trial may be fully understood, we quote at some length from the record:

By Mr. PLACE (attorney for appellant):

Q. Will the device as illustrated on illustrative exhibit A function without the use of the electric power?—A. It can be operated by hand crank.

Q. Have you a photograph of a similar device that is operated by a hand crank?—A. Yes, sir. (Witness produces photograph.)

Q. Is that machine illustrated on the photograph which you have just produced operated on the same principles as the machine illustrated on illustrative exhibit A?

Mr. RYAN. I object to any questions referring to this machine. This photograph which has just been produced shows an entirely different machine to the one involved here. It is a much simpler machine. The machine under consideration is a highly complicated calculating machine.

Presiding Judge FISCHER. We will sustain the objection.

Mr. PLACE. Exception.

By Mr. PLACE:

Q. Could you take a device as represented by illustrative exhibit A and by removing the electric motor and inserting a crank operate the device by hand?

Mr. RYAN. I object to that as calling for a conclusion.

Presiding Judge FISCHER. Sustained.

Mr. PLACE. Exception.

By Mr. PLACE:

Q. Have you seen instances where a device such as that represented by illustrative exhibit A has actually had the electric motor removed and the hand crank put on and the machine operated by that hand crank?

Mr. RYAN. I object to that.

Presiding Judge FISCHER. Sustained.

Mr. PLACE. Exception.

By Mr. PLACE:

Q. Is the electric motor as shown on illustrative exhibit B a necessary or an additional part of the equipment of that device?

Mr. RYAN. Objected to as immaterial.

Presiding Judge FISCHER. Sustained.

Mr. PLACE. Exception. The portion of the paragraph under which the merchandise was assessed provides for articles having as an essential feature an electrical element or device. I am trying to show that the electric motor is not a necessary part of this device, but that it will function without the motor.

Mr. RYAN. As imported, the device contained the motor and to operate it any other way requires a modification of it, different from the condition in which it was imported. *We will admit that it will properly operate the two ways, but as imported the device contained a motor.* (Italics ours.)

Presiding Judge FISCHER. We have sustained your objection.

\*      \*      \*      \*      \*      \*      \*

By Mr. PLACE:

Q. Will you please examine illustrative exhibit C for identification and state if that photograph illustrates a hand crank with which you could operate a device as illustrated on illustrative exhibit A?

Mr. RYAN. I object to the question as being predicated upon a different machine from the one under consideration.

Presiding Judge FISCHER. Objection sustained.

Mr. PLACE. Exception.

By Mr. PLACE:

Q. When you have seen a machine such as is illustrated on illustrative exhibit A operate without the electric motor which is shown on illustrative exhibit B, is there any electricity used in any manner whatsoever?

Mr. RYAN. That is objected to. We are concerned only with the device in the condition as it was imported.

Presiding Judge FISCHER. The objection is sustained.

Mr. PLACE. Exception.

By Mr. PLACE:

Q. Please describe how illustrative exhibit A performs its function.—A. It is simply a calculating machine; that is all. When the totals reach above nine they are carried into another column.

Q. Describe, from a mechanical standpoint, how it operates.

Mr. RYAN. I object. This man has testified that he is not a mechanic. He cannot describe the mechanism of this device.

Presiding Judge FISCHER. Objection sustained.

Mr. PLACE. Exception.

By Mr. PLACE:

Q. Are you sufficiently familiar with the mechanical operation of the device, from a mechanical standpoint, that you can describe the method of its operation?—A. I can do so.

Q. Please do so.

Mr. RYAN. I object. He is trying to do indirectly what he could not do directly.

104

Presiding Judge FISCHER. Objection sustained.

Mr. PLACE. Exception.

## On cross-examination the record contains the following:

Cross-examination by Mr. RYAN (attorney for appellee):

X Q. As imported, the machine constitutes an article of merchandise; is that true?

Mr. PLACE. That is objected to as calling for a conclusion.

By Mr. RYAN:

X Q. Is it or is it not an article of merchandise? It is an article that contains an electric motor. You testified that this illustration represents the machine that was imported and that as imported it contained an electric motor?—A. Yes, sir; it contains an electric motor.

X Q. And as imported that electric motor is essential to its operation?—A. I would say no.

X Q. It furnishes the power necessary to operate the machine?—A. It could be used with a hand crank.

X Q. But as imported, it had no hand crank and could not be operated by hand or any other power other than by the electric motor?—A. It may be operated by hand.

X Q. But in the condition in which it was imported it could only be operated by motor?—A. It could be operated by hand.

X Q. You would have to remove the motor?—A. No, sir.

X Q. There is no hand crank connected with this here?—A. No, sir.

X Q. You would have to add the hand crank and remove the motor in order to apply the hand power?—A. You do not have to remove the motor. You just put the hand crank on and you can use it.

X Q. You have to remove the belting?—A. No, sir.

X Q. *These ten machines which you imported, are they being operated by electric or hand power?*—A. *They are operated by hand power.* (Italics ours.)

X Q. In the condition in which you sold them could they be operated without the electric motor?—A. They could; yes, sir.

X Q. How could they operate without the electric motor?—A. By hand power.

X Q. But there was no hand crank with it to fasten to the device?—A. There was no hand crank.

X Q. Then without that hand crank, the motor was essential for the power to operate the device?

Mr. PLACE. That is objected to as argumentative.

Presiding Judge FISCHER. Sustained.

Mr. RYAN. Exception.

By Mr. RYAN:

X Q. These machines operate solely by motor?—A. Not solely by motor.

X Q. What other power do you apply?—A. Hand power.

X Q. But you have said they have no hand crank. Did you sell these devices without a hand crank?—A. These machines were sold without the hand crank.

X Q. And they were imported without the crank?—A. That shows on the consular invoice.

X Q. I am asking you if they were imported without the crank. Can you state that?—A. There were no hand cranks included in the importation.

X Q. How do you apply hand power to the machines without fastening the hand cranks to them?

Mr. PLACE. Objected to as argumentative and also as being repetition.

Presiding Judge FISCHER. Yes; he has already answered that. Objection sustained.

By Mr. Ryan:

X Q. As imported these machines were only capable of operation by electric power or by the power furnished by the electric motor?—A. Yes, sir.

Mr. Ryan. That is all.

Redirect examination by Mr. Place:

R. Q. Have you ever imported devices such as that illustrated on illustrative exhibit A without the motor?

Mr. Ryan. Objected to as immaterial.

Presiding Judge Fischer. Sustained.

Mr. Place. Exception.

It will be noticed that in the above-quoted testimony there is the following question and answer:

X Q. These ten machines which you imported, are they being operated by electric or hand power?—A. *They are operated by hand power.* (Italics ours.)

In view of the entire record it seems obvious that there may be some error in the answer last above italicized. If all the machines imported are operated by hand power and not by electrical power, the conclusion of the trial court that the article is one having as an essential feature an electrical element or device is clearly wrong. However, in view of the record as a whole, we are not inclined to give the said answer of the witness full weight and credence in the determination of the issue involved.

We think the importer had the right to prove whether or not the machine involved was designed and constructed to be used interchangeably by both hand power and electrical power in the sense that is indicated in our views hereinbefore expressed. We furthermore think that the importer should have had the right to have shown what modifications (if any) were required for hand operation, in order that the court might determine whether such modifications (if any) were of such importance as to be controlling. We conclude that the best interests will be subserved by reversing the judgment of the trial court and remanding the cause for a new trial. Paragraph 353, as above stated, is a new and important provision in tariff legislation. The exact issue in this case has not heretofore been passed upon by this court. The case of *United States* v. *R. W. Cramer & Co., Inc.* (on rehearing), 22 C.C.P.A. (Customs) 45, T.D. 47049 (Suit No. 3722) decided April 23, 1934, and the case of *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050 (Suit No. 3733), decided concurrently herewith, are intended to be and are, we think, as far as applicable, in entire harmony with the views herein expressed. Therefore, we regard it as highly important that a full and complete record of material facts should be made in the case at bar, in order that definite application of the principles hereinbefore announced may be applied.

The Government at the trial below and here has emphasized strongly the fact that there were no hand cranks accompanying the

importation at bar. While the presence or absence of such cranks in a shipment may be a pertinent and proper fact to be shown in a case of the character at bar, in this particular case it is difficult to see just how the failure to include cranks with the importation could be, in the absence of other facts, controlling of the issue.

The judgment of the United States Customs Court is *reversed*, and the cause is *remanded* for a new trial.

GARRETT, Judge, concurs in the result, but for the reasons stated in his dissenting opinion in *United States* v. *Dryden Rubber Co.* (Suit No. 3733), decided concurrently herewith, is not in harmony with the entire reasoning of the majority opinion.