**No. 59619.**—Hill Novelties Mfg. Corp. *v.* United States, protest 234898–K (New York).

OLIVER, Chief Judge: This case relates to merchandise described on the invoice as "Rundmuttern," which was assessed with duty at the rate of 1 cent each and 50 per centum ad valorem under paragraph 1527 (c) (2) of the Tariff Act of 1930 as parts of articles, designed to be carried on or about the person. Paragraph 1527 (c) (2), so far as pertinent, reads as follows:

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

   \*       \*       \*       \*       \*       \*       \*

(2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate) \* \* \*.

Plaintiff's principal claim is for classification of the merchandise as articles, not specially provided for, wholly or partly manufactured,· composed wholly or in chief value of iron or steel, not plated with platinum, gold, or silver, or colored with gold lacquer, under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, carrying a dutiable rate of 22½ per centum ad valorem. It is alternatively claimed that the articles in question are dutiable at three-tenths of 1 cent per pound under the provision in paragraph 330 of the Tariff Act of 1930, as modified by T. D. 51802, for "Nuts, nut blanks, and washers, of wrought iron or steel."

The sole witness was the manager of the plaintiff corporation. He identified the article under consideration as "a screw with a thread inside similar to a screw, a female thread." (R. 3.) He stated that he ordered the imported merchandise according to specifications for use in a keyring that he designed. His testimony concerning actual use of the article in question establishes that it is exclusively used in a keyring that will carry approximately six keys. The witness stated that he had seen people put the keyring in their pockets.

Samples of the imported merchandise and the finished product with which it is used support the oral testimony. Samples are potent witnesses. (*Marshall Field & Co.* v. *United States*, 20 C. C. P. A. (Customs) 225, T. D. 46037.) The article in question is a metal screw, measuring approximately three-sixteenths

of 1 inch overall in length, and with an outside diameter of approximately one-eighth of 1 inch. The head is convex in shape and has been slotted. The screw has been drilled and threaded on the inside (plaintiff's collective exhibit 1). It is agreed between counsel for the respective parties that "Plaintiff's Exhibit #1 is in chief value of steel, not plated with platinum, gold or silver or covered with gold lacquer." The finished keyring consists of a metal piece (characterized as a "metal hook") and a plastic container (plaintiff's illustrative exhibit 2). The metal hook is shaped like a "question mark" (plaintiff's illustrative exhibit 3). The lower vertical section, approximately seven-eighths of 1 inch long, has a spring attached thereto, and the end is threaded. The metal screw in question not only holds the spring in position, but also serves to fasten the metal hook to the plastic base. The peculiar construction of the metal hook makes it specifically adapted for use with the plastic container that is 1 inch square and one-quarter of an inch thick. The top has an indentation that extends halfway across, and there is a hole at the end. Both of these features permit an exact fitting of the metal hook into the plastic container. The complete assembly, resembling a padlock, functions as a keyring, or a keyholder.

The evidence before us, as hereinabove outlined, is conclusive to the effect that the article in question is unlike any of the ordinary types of screws of commerce; that it was manufactured according to specifications for a specific use; and that it is exclusively employed in a particular type or kind of keyring (illustrative exhibit 2, *supra*). The established facts are sufficient to hold that the article in question is a "part," within the judicial interpretation of that term in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, wherein the appellate court stated as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266. [Italics quoted.]

Applying herein the definition embodied in the foregoing quotation, it can be said that the merchandise in question is an integral, constituent, or component part of a keyring to which it is joined, and that the keyring cannot function as such without the imported screw under consideration. The article before us is, therefore, a part of the keyring (illustrative exhibit 2, *supra*).

"The law is well settled that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification," (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75). Under those principles, the presumption of correctness attaching to the collector's classification of the present merchandise as part of a keyring includes a finding by the classifying officer that the keyring, *per se*, is within the class of articles contemplated by paragraph 1527 (c), *supra*, invoked by the collector.

It is "fundamental in customs law that when the classification of the collector is challenged, the dual burden of proving that such classification is incorrect and that its own claimed classification is correct, rests upon the importer," *Yardley & Co., Ltd., et al.* v. *United States*, 41 C. C. P. A. (Customs) 85, C. A. D. 533. On the basis of the evidence before us, plaintiff has failed to sustain its burden. On the contrary, the sample (illustrative exhibit 2, *supra*), coupled with plaintiff's

testimony, supports the collector's action. The size, shape, and light construction of the keyring (illustrative exhibit 2), together with the witness' statement that he had seen people put such a keyring in their pockets, are factors to be associated with an article, designed to be carried on or about the person.

To support its contention that the keyring under discussion is not within the class of merchandise classifiable under paragraph 1527 (c) (2), *supra*, plaintiff's brief cites the case of *United States* v. *Kress & Co.*, 13 Ct. Cust. Appls. 66, T. D. 40885, wherein certain metal keyrings were held to be classifiable as manufactures of metal, rather than as articles, designed to be carried on or about the person. In the cited case, our appellate court described the merchandise there under consideration as "heavy steel key rings attached to steel snap hooks having leather loops," and found that they were "suitable to be carried on or about the person, *but they were not designed or made for that purpose.*" [Italics added.] The keyring involved in the present controversy is materially different, for the reasons here-inabove set forth, from the articles before the court in the *Kress & Co.* case, *supra*. Hence, the reasoning followed and the conclusion reached in that case cannot be applied in this case.

All of the other cases cited in the briefs of counsel for the respective parties have been carefully considered. To discuss them in detail would unduly lengthen this opinion.

On the basis of the record before us, and for all of the reasons hereinabove set forth, we hold the merchandise in question to be properly classifiable as parts of articles, designed to be carried on or about the person, under paragraph 1527 (c) (2), *supra*, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.