(C.D. 2300)

UNIVERSAL FOREIGN SERVICE, INC., GONSET DIVISION ET AL.
*v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 7, 1961)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiffs.

*William H. Orrick, Jr.,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

FORD, Judge: The protests listed in schedule "A," annexed hereto and made a part hereof, consolidated for the purpose of trial, relate to certain merchandise, described on the invoices as either Ammeters or Meters, item numbers 112–003, 112–004, 112–012, and 112–014, and Meter, item number VU 112–012, in protest 60/1884, on which the collector of customs assessed duty at the rate of 50 cents each and 32½ per centum ad valorem under paragraph 368(a) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, 69 Treas. Dec, 74, T.D. 48093, plus 0.32 cent per pound on the copper content, under Internal Revenue Code, section 4541(3), as modified, on merchandise covered by protest 60/1884.

Paragraph 368(a), *supra*, provides as follows:

* * * mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity; time switches; all the foregoing which are provided for in paragraph 368 whether or not in cases, containers, or housings:

    (1) * * *

        Valued at more than $1.10 but not more than $2.25 each____ 50¢ each.

        \*       \*       \*       \*       \*       \*       \*

    (2) Any of the foregoing shall be subject to an additional duty of_____ 32½% ad val.

        \*       \*       \*       \*       \*       \*       \*

The protest claim is for duty at the rate of 12½ per centum ad valorem under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, which provides for:

Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices) _____ 12½% ad val.

    \*       \*       \*       \*       \*  ·      \*       \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof)    The same rate of duty as the articles of which they are parts.

In addition to the foregoing claim, counsel for the respective parties have stipulated that the item described on the invoice in protest 60/1884 as "Meter VU 112–012" is not a clockwork mechanism or any mechanical device or instrument suitable for measuring the flowage of electricity. It was further stipulated, with respect to said item

number, that it is in chief value of metal and has as an essential feature an electrical element or device.

Based upon this stipulation and an amendment duly received, plaintiffs contend said item to be properly dutiable at the rate of 13¾ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by said Torquay protocol, *supra*, as:

Articles having as an essential feature an electrical element or device, * * * wholly or in chief value of metal, and not specially provided for:

     *        *        *        *        *        *        *

    Other * * *_____ 13¾% ad val.

With respect to the foregoing item VU 112–012, we find and hold that said item is properly dutiable at 13¾ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as claimed by plaintiffs.

The evidence, in this case, consists of the testimony of the well-qualified chief engineer of the actual importer herein, Mr. Phineas Jerome Icenbice, Jr., as well as seven exhibits described below:

Plaintiffs' exhibit 1 consists of a sample of a meter, described on the invoices as item 112–003.

Plaintiffs' exhibit 2 consists of a meter, the same as exhibit 1, with the case removed.

Plaintiffs' illustrative exhibit 3 is a meter identical to exhibit 1, except for a different scale on the face of the meter.

Plaintiffs' exhibit 4 consists of a blueprint of item 112–003, setting specifications.

Plaintiffs' exhibit 5 is a brochure, illustrating a type of radio in which the meters are used.

Plaintiffs' illustrative exhibit 6 is a photograph of a radio, which contains a meter identical to the meters involved herein, except for the case.

Plaintiffs' illustrative exhibit 7 is an illustration of a radio, which utilizes a tuning eye rather than a meter.

The pertinent parts of the testimony of Mr. Icenbice indicate that the prefix 112 of the item numbers is indicative of a common meter movement and that the suffixes, such as 003, 004, etc., are used to differentiate the scale to be used on the face of the meter. It was stipulated by and between counsel for the respective parties that exhibit 1 is in chief value of metal.

Mr. Icenbice testified that he is familiar with the use of the involved meters and has designed them into various transmitters, receivers, and transreceivers; that the meters are used in the receivers to indicate the automatic volume control voltage; that when the meter gives a maximum indication, the set is properly tuned and that this is accomplished by converting the actual output voltage from alternating current to direct current, which is fed into the meter; that the meters

are used in communication equipment, radios, radio receivers, and radio transmitters.

The witness then testified that, to the best of his knowledge, the involved meters have never been used in anything except radios and are specially designed for the radios that his company builds; that radios, such as exhibits 5 and 6, can be operated without the involved meters or something comparable to them, such as the magic tuning eye. In response to a question put to him by his counsel as to whether it could be operated efficiently, the witness answered, "Well, many blind people are able to tune in transmitters and receivers." However, if the meters were removed from exhibits 5 and 6, the witness was of the opinion that you could not "efficiently" operate these radios, "Because it is very desirable to have an indication of when it is properly tuned, and if you are looking for maximum efficiency and best quality, and all the other things considered, and you are attempting to give a relative signal strength report to the station on the other end, it can only be found by reading the meter or looking at the indication that is presented on the meter." A bulb, in some instances, is used to indicate whether the transmitter or receiver is properly tuned by whether it presents a bright or dim light. Such is the manner utilized by the item in plaintiffs' illustrative exhibit 7.

Mr. Icenbice testified that he is familiar with the instrument used for measuring the flowage of electricity; that there are many types of basic movements and that the one involved is referred to as the DeArsonval movement; that items, such as exhibit 2, are not primarily used for measuring the flowage of electricity, but as a tuning indicator; that the involved meters and meters suitable for the measurement of the flowage of electricity have in common a pointer and terminals that lead to the instrument, and they are both an attempt to indicate the amplitude of something and, in most cases, are either direct current or alternating current instruments; that the involved meters have an accuracy which is 5 per centum of the full scale, which he considered a rather coarse reading, and, in addition, do not have a meter scale; that, in his opinion, the item is not in the instrument class at all; that the instrument class would be one-tenth or one-fourth per centum accuracy any place across the scale, rather than just the full scale, and would require a metered scale to eliminate parallax; that the primary purpose of exhibit 1 is to perform as a tuning indicator for tuning transmitters and receivers.

On cross-examination, the witness testified that the involved meters consist of a simple coil and a fixed magnet; that the electricity flows through the coil of wire, causing the needle of the meter to move; that the needle will move, depending upon the amount of electricity that goes through the coil, and gives an indication.

On redirect examination, Mr. Icenbice testified that although exhibit 1 contains numbers from 1 to 10, it is simply a relative indication of output power and does not refer to wattage, power, or current.

Based upon the foregoing, plaintiffs contend since the dials on these meters are not calibrated to give any electrical measurement, but merely indicate maximum tuning, that they are not mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity, such as is provided in paragraph 368, *supra*. It is further contended that not all devices with dials, needles, or clockwork mechanisms fall within the purview of paragraph 368, *supra*, citing *United States* v. *Cambridge Instrument Co.*, 21 C.C.P.A. (Customs) 508, T.D. 46970; *Selsi Co., Inc.* v. *United States*, 72 Treas. Dec. 525, T.D. 49235; *Same* v. *Same*, 1 Cust. Ct. 59, C.D. 16; *Alfred Hornung* v. *United States*, 31 Cust. Ct. 126, C.D. 1558.

The *Cambridge Instrument Co.* case, *supra*, involved an article known as an accelerometer, which was used to determine vertical or horizontal acceleration of any moving body. The court, in considering the shipment involved under the Tariff Act of 1930, one shipment having been imported during the existence of the Tariff Act of 1922, held said merchandise did not measure speed or distance, except in a relative way, and the items, therefore, were not measuring devices.

In the *Selsi* cases, *supra*, certain barographs, which recorded the rise and fall of atmospheric pressure, were held not to be dutiable under paragraph 368 of the Tariff Act of 1930.

The *Hornung* case, *supra*, involved certain step counters, and the court concluded that said items merely recorded the number of steps, and since the dial was not calibrated in mileage, they were not distance measuring devices.

Counsel for plaintiffs, in its brief, admits that there are radios manufactured without tuning indicators or with tuning indicators different from the meters involved herein; however, it is contended that once installed in the radio, the meters are essential to the proper functioning of such radios. From this, it is argued that such meters are parts of radios, under the authority of *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602.

The *Pompeo* case, *supra*, involved superchargers, designed for use in particular automobiles. In that case, as in the case at bar, it was established that there are automobiles manufactured without the superchargers. The court, however, held that the superchargers involved therein were dedicated irrevocably for use upon automobiles and found them to be parts for automobiles, as claimed by the importer therein.

The question as to whether an article falls within the purview of a so-called parts provision has been the subject of substantial litigation in the field of customs jurisprudence. The definition of what consti-

tutes a part is found in the case most often cited for this proposition, i.e., *United States* v. *Willoughby Camera Stores, Inc.*, 21 Ct. Cust. Appls. 322, T.D. 46851, which is as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T.D. 43266. [Italics quoted.]

In the case at bar, as in the *Pompeo* case, *supra*, there is no question but that there are radio receivers or radio transmitters which are manufactured without the use of meters, such as are involved herein. The court, in the *Pompeo* case, *supra*, summed up a situation, such as is involved herein, in the following paragraph:

We are of the opinion that the Government has misconceived the real issue before us. The problem is not whether or not automobiles are customarily manufactured with superchargers, but rather what is the nature and function of the imported superchargers. At the time of importation these superchargers, as the undisputed evidence clearly shows, are dedicated irrevocably for use upon automobiles. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their undisputed ultimate use. The *Willoughby* case upon which the Government relies so heavily did not turn upon the fact that the cameras were not designed to operate with tripods. As a matter of fact the court indicates at 21 C.C.P.A. (Customs) 323 that the cameras had "sockets" designed to receive the tripods. The court considered, rather, the function performed by the tripod when applied to its ultimate use, and concluded that in that use it was not a part of a camera. As we understand the *Willoughby* case, it would have made no difference in the result even if the tripods had been imported in physical attachment to the camera. Appellee is correct in his argument that the facts of the *Willoughby* case are different from those presented here.

Following the principles set forth above and based upon the record as made herein, we are of the opinion that the involved meters are not instruments or devices intended or suitable for the measurement or flowage of electricity and are, in fact, with the exception of Meter VU 112–012, parts of radios and, accordingly, hold the involved meters to be properly dutiable at the rate of 12½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as claimed herein. With respect to Meter VU 112–012, it having been stipulated by and between the parties that it is not an instrument or device suitable for measuring the flowage of electricity and is, in fact, in chief value of metal and has as an essential feature an electrical element or device, we hold said meter to be properly dutiable at the rate of 13¾ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as claimed herein. Judgment will be rendered accordingly.