(C. D. 1874)

MANCA, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided April 26, 1957)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The involved merchandise consists of two types of a device known as an "enlarger," an instrument for taking a photograph of a subject in an enlarged size, imported under the trade names "Valoy" and "Focomat." It was classified under the provisions of paragraph 228 (b) of the Tariff Act of 1930 at the rate of 45 per centum ad valorem as "projection lenses * * * frames and mountings therefor." Plaintiff claims that the articles at bar are properly classifiable under paragraph 1551 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by Presidential proclamation, T. D. 52820, at the rate of 15 per centum ad valorem as photographic cameras.

It appears that the merchandise in this case was imported without lenses and, at the trial, the protests herein were amended to include, in addition to the claim at the rate of 15 per centum ad valorem under paragraph 1551, as modified, *supra*, a claim at the rate of 20

per centum ad valorem under the pertinent paragraph of the act, depending on whether the imported merchandise might be construed as photographic cameras or as parts thereof.

Certain pictorial representations of the involved items, which were used to promote the sale of the merchandise, were received in evidence as plaintiff's exhibits 1 and 3 (R. 12).

Two witnesses testified on behalf of the plaintiff. Plaintiff's witness, Alfred Boch, is the vice president of E. Leitz, Inc., and also vice president of the plaintiff concern. He stated that Manca, Inc., is the importer of the involved merchandise, and that E. Leitz, Inc., is the distributor in the United States (R. 6). The witness, who had supervised the importation of the involved items and who was familiar with their function and performance, described the merchandise in substance as follows:

Both enlargers, the "Valoy" and "Focomat," serve the purpose of "making enlarged prints, photographic prints on sensitized paper, or on sensitized material"; both consist of a base with an upright, to which is attached an enlarger head; the upper part of the enlarger head is a lamp housing, which serves the purpose of illuminating the negative, which is introduced into the enlarger; below the negative is a photographically corrected lens. The lens forms an image from the negative on the base of the enlarger or on an easel. Both enlargers permit the use of a small "cassette or magazine," into which can be inserted sensitized photographic film; this can be put into the enlarger head, where the negative would normally be located, and photographs can then be taken in the usual manner.

The enlargers are used in a dark room with a safety light, the lamp in the enlarger being turned on for a period of time to expose the sensitized material.

In the employment of lenses with these enlargers, "a photographically corrected lens" is used, so that any imperfections in the image may be observed. The "Focomat" and the "Valoy" enlargers differ in that one must be focused by hand, and the other may be focused automatically (R. 15–18).

Plaintiff's witness further testified that a projection lens is normally not a single lens but a lens system, consisting of several single lens components, which are mounted together in a "mount"; that a projection lens is more appropriately described as a projector, and not a mount for a projection lens. He stated that, as a unit, the projector is one which would include a lens, and, in addition, magnification and light source, as well as certain arrangements for switching the picture on and off (R. 20–21).

The witness testified that the purpose of a projector would be to project or throw an image on a screen, so that it could be conveniently

observed; that, in his opinion, a projector serves the purpose of projecting an image of a transparency or something else on the screen, and not photographically recording that image, stating, in this connection, that a projector does not use sensitized material as is employed in the case of enlargers (R. 23).

Mr. Boch then testified that, in his opinion, an enlarger is a photographic apparatus or a photographic camera and that he did not consider such an instrument to be a projection lens or a projector. He stated, as reasons for such conclusion, that a photographic camera serves the purpose of photographically recording an image on sensitized material; that, after development of the image, a permanent record is obtained, whereas a projector, while serving the purpose of projecting the image, does not photographically record the image permanently; that a projection lens does not have the necessary high degree of correction to produce a satisfactory photographic image (R. 24–25).

On cross-examination, the witness Boch testified that the enlargers are used in a dark room with a safety light; that they could not be used in a room with the light on, except with the use of a hood to protect the sensitized paper, but that photographic cameras, like the box camera, could be used to take a picture in a room with the lights on. In this connection, plaintiff's witness testified that "You use light to record the image in both instances" (R. 29). He stated that the enlarger differs from a projection apparatus, such as a magic lantern, with respect to the lens, the lens in an enlarger having a higher degree of correction (R. 31–32). The witness further testified that, when using these enlargers with a cassette or magazine to take photographs, the light source in the enlarger remains inoperative. With respect to the use of a cassette or magazine in the involved enlargers, the record discloses the following:

JUDGE MOLLISON: When you use a cassette, what would you have in the magazine when you put it into the enlarger?

THE WITNESS: Sensitized film.

JUDGE MOLLISON: The same as you put in the ordinary 35 millimeter camera, or whatever size film you use?

THE WITNESS: Yes. (R. 33.)

\* \* \* \* \* \* \*

JUDGE MOLLISON: Suppose you were going to use the enlarger to take a picture, and you inserted unexposed regular photographic film in the cassette or magazine, and put that into the enlarger; you first would turn off the light that you normally use for enlarging, and then having done so, you then would use whatever available light, either in the room or that you provided, in order to take a picture, correct?

THE WITNESS: Yes, I would have to provide some light.

JUDGE MOLLISON: If you were using the slower film, you would have to have more light?

THE WITNESS: Yes.

JUDGE MOLLISON: If you use the enlarger to take a picture in the normal way you use an ordinary 35 millimeter camera and then turn off the enlarging light, you would have to provide some light on the subject in order to get a picture, is that correct?

THE WITNESS: Yes. (R. 35–36.)

Mr. Boch then explained that, in making a positive contact print from a negative, the negative is put together with paper and exposed, stating that "Normally you wouldn't call that taking a picture" (R. 40), but that, if the loose term of "taking a picture" with a camera is applied, the making of a print with an enlarger could also "loosely" be called taking a picture (R. 40–41).

Plaintiff's second witness was Mr. Harry M. Lester, who has been engaged in professional photography since 1930, primarily as consultant in photographic engineering. In this connection, he has been employed by the Port of New York Authority, the Memorial Hospital for cancer research, the New York City Zoological Society, and the Graflex Corp. of Rochester, N. Y., maker of camera equipment, as well as having done consultant work for a number of industrial concerns and the United States Navy, Coast Guard, and Army. He has also written a number of books on photography. The witness testified that he had used the Valoy and Focomat enlargers, here under consideration, and that he was familiar with their construction and operation. He agreed with the testimony of the prior witness as to the nature of the involved articles, stating that, in his opinion, "as a photographic expert, and a photographic engineer," the involved items are "cameras" (R. 46).

Plaintiff's witness further stated that he was familiar with projection lenses and projectors, explaining that, wherever there is a lens or an objective, there is involved the system of projection, but that, for instance, in the case of a motion-picture projector, there is no permanence to the image, whereas, in the case of an enlarger, "there is a trace of it left" (R. 47–48). The witness corroborated the testimony of Mr. Boch, with respect to the use of sensitized material in the enlarger and its nonuse in a projector. He further testified that there is a difference between a projection lens and a lens which is used in an enlarger; that a lens, suitable for use in an enlarger, should have the same qualities and properties as the lens used in a camera, that is, photographically correct lenses.

As further reasons for his opinion that the imported enlargers are photographic "cameras," Mr. Lester testified that the enlarger has facilities for aligning and holding the photo-sensitive material in a definite and critical alignment with the negative and that, in the case of an enlarger, there is a considerably shorter distance of projection than that when a projector is employed. He stated that another

feature of similarity between an enlarger and a camera is the ability to control the duration of the light affecting the photo-sensitive surface (R. 51).

On cross-examination, Mr. Lester agreed that, if photo-sensitive material were placed on a wall and a magic lantern projected onto that material, under proper conditions of timing and light, there would be a latent image on that material, but explained that, with respect to photography, an important factor is quality of reproduction and the obtaining of a photographically acceptable image (R. 53–54). The witness likewise agreed that focusing a projector on a wall is part of good photography, even though there may not be any light-sensitive material involved. He further testified that getting a print is the final step of taking a picture, "because you have no picture unless you have a print" (R. 56–57).

The issue in this case is whether the involved enlargers are properly classifiable as photographic cameras and dutiable, as such, under paragraph 1551 of the Tariff Act of 1930, as amended, as claimed. In this connection, certain decisions of this and our appellate court appear pertinent.

In *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673, certain photolithographic camera screens were held properly classifiable under predecessor paragraph 1453 of the Tariff Act of 1922 as parts of photographic cameras, and not under paragraph 218 of the said act as glass articles. In its decision, at page 142, the court stated:

We call attention, also, to the case of *American Steel & Copper Plate Co.*, Abstract 46545, 44 Treas. Dec. 476, where merchandise identical with that at bar was involved, under the provisions of paragraph 380 of the tariff act of October 3, 1913.

The court said:

It was evident from the testimony that the merchandise in question is an essential part of the reproduction camera. It was held that Congress in providing in paragraph 380 for photographic cameras and parts thereof generally, did not specify any particular kind of photographic camera or parts and it was to be presumed that they intended this paragraph to cover all varieties of photographic cameras and parts thereof.

In *Drem Products Corp.* v. *United States*, 54 Treas. Dec. 632, Abstract 7038, the merchandise in question was classified at 45 per centum ad valorem under paragraph 228, Tariff Act of 1922, as photographic and projection lenses. It was claimed dutiable as photographic cameras and parts at 20 per centum under paragraph 1453. In holding the merchandise dutiable, as claimed, the court stated:

The testimony showed that the particular use of the article in question is for the enlarging of prints of photographic material. It differs from an ordinary photographic camera by reason of having an electric light, and is used by amateurs who have small cameras and desire larger pictures. From the record it was found

that the merchandise in question is a species of camera used for enlarging photographs, and differs from the pathescope, moving-picture machine, mirrorscope, or radiopticon, heretofore passed upon and held dutiable as projection lenses, in that it is used to provide a *permanent* representation of the picture or photograph enlarged while the moving-picture machine provides only a fleeting picture on the screen. The merchandise was held dutiable under the provision for photographic cameras under paragraph 1453, which provision was held broad and general enough to include every possible kind of photographic camera. G. A. 7826 (T. D. 35970), affirmed in United States *v.* American Express Co. (7 Ct. Cust. Appls. 169; T. D. 36490), Abstracts 51003, 3735, 6790, 39352, 39771, 40316, 40463, 40680, 46545, 47650, and 5542, Pathe *v.* United States (T. D. 42523), G. A. 7915 (T. D. 36451), and G. A. 9058 (T. D. 41190), affirmed in United States *v.* American Steel & Copper Plate Co. (14 Ct. Cust. Appls. 139; T. D. 41673), cited. [Italics quoted.]

In *United States* v. *Carl Zeiss, Inc.*, 27 C. C. P. A. (Customs) 12, C. A. D. 54, our appellate court, in holding certain "Nordenson" or "retinal" cameras, used solely for the purpose of photographing the retina of the eye, and which could not be used for any other purpose, properly classifiable under paragraph 1551 of the Tariff Act of 1930 as "Photographic cameras and parts thereof," page 15, stated:

As is well known, there are many special forms of "cameras, panoramic, binocular, enlarging, etc." Webster's New International Dictionary. See also *United States* v. *E. Leitz, Inc.*, 24 C. C. P. A. (Customs) 139, T. D. 48622, where "Photomicrographic cameras for photo-micrographing metals" were held to be dutiable as photographic cameras at 20 per centum ad valorem under paragraph 1551, *supra.*

The involved cameras are used for no purpose other than the taking of photographs, and the mere fact that they are used exclusively to photograph a particular object for a special purpose does not change their status as photographic cameras. * * *

In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means, House of Representatives, at the time the Tariff Act of 1930 was under consideration, at pages 2137–2138, under "Decisions," the following is stated:

An article used for the enlarging of prints of photographic material and differing from an ordinary photographic camera by reason of having an electric light and used by amateurs who have small cameras and desire larger pictures was declared to be a species of camera used for enlarging photographs and to differ from the pathescope moving-picture machine, mirror-scope or radiopticon in that it is used to provide a *permanent* representation of the picture or photograph enlarged, whereas the moving-picture machine provides only a fleeting picture on the screen, was held dutiable under the provision for photographic cameras in paragraph 1453, which provision was held broad and general enough to include every kind of photographic camera. (Ab. (N) 7038.) [Italics quoted.]

The defendant, in support of the classification, directs our attention to the case of *American Holding Corp. et al.* v. *United States*, 18 C. C. P. A. (Customs) 275, T. D. 44449. In that case, the device under consideration was an essential unit or part of a motion-picture

projection mechanism, consisting of a metal frame, to which were attached "sprockets or shafts," the function of which was to move the film from an upper magazine in a downward direction intermittently through rays of light, and a shutter unit so synchronized with an intermittent sprocket as to control the passage of the rays of light from a lamp house to the screen, and upon which the projection lens was mounted. Our appellate court therein held the involved device was *eo nomine* provided for in paragraph 228 of the Tariff Act of 1922 at the rate of 45 per centum ad valorem as mountings or frames for projection lenses, as classified, and that it was more specifically provided for therein, as such, than under paragraph 372 of the said act as parts of machines. In our opinion, however, the finding of the court in the *American Holding Corp.* case, *supra*, is not controlling in the determination of the question here before us. In the case at bar, while the involved instruments, when in use, employ the system of projection, they are something more than projection lenses or frames and mountings therefor. These enlargers consist of a number of devices, all making up the composite article and all of which are essential to the function of the instrument. The record establishes that they are employed for no other purpose than the taking of photographs to obtain a photographic reproduction of an image and not merely to project an image for viewing purposes. The fact that they are used to blow up or enlarge an object photograph does not derogate from their status as photographic cameras, and, in our opinion, they are more specifically provided for, as such, under paragraph 1551 of the act, as amended, as claimed, rather than as projection lenses or frames and mountings therefor.

In the light of the cited decisions, and the record in the case at bar, we hold the imported enlargers properly classifiable at the rate of 15 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and T. D. 52820, as photographic cameras, as claimed. To this extent, the claim in the protests herein is sustained. As to all other claims, the protests are overruled. Judgment will be entered accordingly.