BEFORE THE FIRST DIVISION, MAY 25, 1961

**No. 65690.**—Lanston Industries, Inc. *v.* United States, protest 60/4845 (Philadelphia).

OLIVER, Chief Judge: Plaintiff, whose business is to supply equipment to the graphic arts industry, imported several items of merchandise which were classified either as photographic cameras, not specially provided for, valued at $10 or more each, carrying a dutiable rate of 15 per centum ad valorem, under paragraph 1551 of the Tariff Act of 1930, as modified, or as parts of photographic cameras, not specially provided for, under paragraph 1551 of the Tariff Act of 1930, with a duty assessment at the rate of 20 per centum ad valorem.

Plaintiff's principal claim is that the merchandise is free of duty under the provision in paragraph 1643 of the Tariff Act of 1930 for "all typesetting machines, * * * whether in whole or in part, including repair parts." An alternative claim, with respect to the metal articles included in the shipment in question, is made for classification under the provision in paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, for "Articles having as an essential feature an electrical element or device * * *, finished or unfinished, wholly or in chief value of metal, and not specially provided for," with a dutiable rate of 13¾ per centum ad valorem.

The sole witness who appeared herein was the sales engineer in the monotype division of the plaintiff corporation. His uncontradicted testimony will support the following factual foundation.

The imported items are operating parts for a " 'MONOPHOTO' FILMSETTING MACHINE" (defendant's exhibit A), hereinafter referred to as the monophoto machine. This machine weighs 1,200 pounds, occupies a floor space area of about 25 square feet, and is operated by electric motor. The end product of the machine is a sensitized film used for offset and gravure printing processes. To perform its function, the monophoto machine has fitted therein a perforated paper roll (plaintiff's exhibit 1), that is produced from a typesetting keyboard. The perforated paper roll has the general appearance of what is commonly recognized as a player-piano roll. Two rows of perforations are on the paper; one on the right side, and the other on the left side. This perforated roll contains the information necessary to control the typesetting operation.

By means of a complex mechanism in the monophoto machine, compressed air is released through the perforations in such a way as to move a guide arm that selects and spaces characters of type which are arranged in, what the witness characterized, a "monophoto matrix case" (plaintiff's exhibit 3), but which plaintiff's advertising circular (exhibit A, *supra*) describes as a "MASTER NEGATIVE" that is housed in a steel frame and is comprised of "255 characters and spaces, the former transparent against an opaque ground, and each occupying a square with sides measuring 2 inch." When the character of type has been selected and positioned at a certain point in the monophoto machine, a light beam exposes the character on sensitized film that is attached to, or fitted on, a drum which holds the film. The witness described the light as follows (R. 20) :

The light is a 48-watt prefocused automobile headlight bulb and its beam is concentrated through a lens that condenses it similar to the way we would with a burning glass. It concentrates it to that point so that it is a strong beam of light going through the character for exact production of it on the sensitized material.

The characters of type are exposed in a row and the "drum then moves the distance of the space between lines and another line is exposed. And it is exposed line for line and character for character at the rate of 180 characters per minute." (R. 21.) The sensitized film with the composed type (defendant's exhibit B) is used "to produce an offset printing plate or gravure." (R. 30.)

Government counsel, arguing to support the collector's classification, cites *Manca, Inc. v. United States*, 38 Cust. Ct. 271, C.D. 1874, and *Westinghouse Electric International Co. v. United States*, 28 Cust. Ct. 209, C.D. 1411. In the

*Manca* case, the merchandise consisted of so-called "enlargers" that were employed for taking photographs "to obtain a photographic reproduction of an image and not merely to project an image for viewing purposes." The *Westinghouse* case involved a special camera used with an X-ray apparatus as a camera to take X-ray photographs (photofluorograms). In both of the cited cases, the merchandise under consideration was held to be classifiable under the provision for photographic cameras and parts thereof. In each of them, the conclusion was based on a finding that the merchandise involved therein was used for no purpose other than the taking of photographs.

The same is not true with respect to the monophoto machine under discussion herein. This machine performs the dual function of setting type and photocomposing type. In the first phase of its overall operations, the monophoto machine utilizes its typesetting mechanism which selects and spaces characters of type. In this aspect of the machine, it performs a function and serves a purpose, as a typesetting apparatus, wholly unrelated to photography. Beyond its manipulation of setting characters of type, the machine composes the type on sensitized film that is used to produce an offset printing plate or gravure. While this monophoto machine uses an optical system and employs sensitized film, it cannot be considered a camera. The end product, composed type on film, is not a photograph. Plaintiff's witness, conceded by defendant to be "very well-qualified," testified that "I have never heard the word 'camera' referred to in any way, shape, or form in connection with monophoto." (R. 30.)

Counsel for plaintiff, in their brief, argue that the process employed in the operation of the monophoto machine is the modern typesetting process, being an advancement over the earlier hot metal process, and, therefore, the monophoto machine should be classified as a typesetting machine. To give favorable consideration to such contention, would be to recognize only the first phase of the machine's operation, and to ignore its later, or final, phase of operation, which produces the sensitized film of composed type that is the ultimate product desirable for printing processes.

The monophoto machine is an electrically operated contrivance which sets type and also composes type. It possesses a combination of features that are essential to its multiple characteristics. It is not a device susceptible of use for one purpose and, then, when equipped with a certain attachment, becomes available to accomplish an added result. By design and construction, the monophoto machine is dedicated to its dual function of setting type and photocomposing it. In other words, the monophoto machine is something more than a typesetting machine.

The term "more than" is frequently used in judicial construction of tariff statutory language in distinguishing between an imported commodity and articles that are *eo nomine* designated in the statute. In *McLaughlin & Freeman* v. *United States*, 18 C.C.P.A. (Customs) 128, T.D. 44094, certain ornamental photographic pictures on glass, which was gilded on the back, were held to be more than photographs and dutiable as manufactures in chief value of glass. A toilet paper distributor or roll holder, equipped with a music-box mechanism, was held to be more than a music box and, therefore, excluded from classification under the provision for "Music boxes and parts thereof," *Thorens, Inc.* v. *United States*, 31 C.C.P.A. (Customs) 125, C.A.D. 261. In *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, C.D. 1122, so-called Clutsom machines that performed the dual functions of weaving and knitting in producing a narrow woven fabric with a knitted selvage, were held to be removed from "the category of 'looms,'" whose operations are confined to weaving. The early case of *J. W. Hampton, Jr., & Co.* v. *United States*, 24 Treas. Dec. 218, T.D. 33191, held that

a machine, which printed tickets, and at the same time recorded the amount received and registered the sale, was something more than a printing press.

Under the principle enunciated in all of the cited cases, the monophoto machine, by reason of its dual functions heretofore set forth, is something more than a typesetting machine and, therefore, is excluded from classification under the provision for such machines in paragraph 1643, *supra*.

For all of the reasons hereinabove set forth, we hold that the monophoto machine discussed herein is neither dutiable within the tariff provisions for photographic cameras and parts thereof, invoked by the collector, nor classifiable as free of duty under the provision for typesetting machines, as alleged by plaintiff.

This monophoto machine is operated by an electric motor and has other essential electrical features. It is, therefore, properly classifiable under the provision in paragraph 353, as modified, *supra*, for "Articles having as an essential feature an electrical element or device, such as electric motors, * * *, finished or unfinished, wholly or in chief value of metal, and not specially provided for." Plaintiff's uncontradicted evidence is sufficient to establish that the items involved herein are parts of such an article, but since the provision in said modified paragraph 353 is limited to merchandise composed wholly or in chief value of metal, classification thereunder will not apply to the items identified on the invoice as "Vyback Sheets" of various sizes, "dust cover," "dust cover for correction device," and " 'Selvyt' Cloths," which are concededly not composed of metal. All other merchandise, assessed with duty either at the rate of 15 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930, as modified, or at the rate of 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930, is dutiable at the rate of 13¾ per centum ad valorem under paragraph 353, as modified, *supra*, as claimed by plaintiff, and we so hold.

To the extent indicated, the protest is sustained and judgment will be rendered accordingly.