(C. D. 1492)

HENRY WILD SURVEYING INSTRUMENT
  SUPPLY CO. OF AMERICA
ROHNER, GEHRIG & CO., INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 8, 1953)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs.
*Charles J. Wagner*, Acting Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case concerns certain glass prisms and glass micrometer drums, described on the invoice as follows:

> prisms T3–13/NT3–197
> prisms NT3–194a 360°
> prisms NT3–196
> prisms T3–15a
> micrometer drums T3–16a 360°

Samples of the items were received in evidence and bear exhibit numbers 1 to 5, respectively.

The collector classified the merchandise as scientific articles, composed wholly or in chief value of glass, under paragraph 218 (a) of the Tariff Act of 1930 and accordingly assessed duty at the rate of 85 per centum ad valorem.

Plaintiffs make several claims, alleging applicability of one of the following provisions:

Paragraph 226, Tariff Act of 1930:

* * * strips of glass not more than three inches wide, ground or polished on one or both sides to a cylindrical or prismatic form, including those used in the construction of gauges, and glass slides for magic lanterns, 35 per centum ad valorem.

Paragraph 226, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802:

Lenses of glass or pebble, molded or pressed, or ground and polished to a sperhical, cylindrical or prismatic form, and ground and polished plano or coquille glasses, wholly or partly manufactured:

    *       *       *       *       *       *       *

    With the edges ground or beveled (except lighthouse, spectacle, and eyeglass lenses) _____ 10¢ per doz. pairs and 25% ad val.

Paragraph 230 (c), Tariff Act of 1930:

Glass ruled or etched in any manner, and manufactures of such glass, * * * for measuring or recording purposes, 55 per centum ad valorem.

Paragraph 228 (a), Tariff Act of 1930:

* * * optical measuring or optical testing instruments, · * * * frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

The sole witness in the case was a sales manager of the importing corporation, a general distributor of surveying instruments, drawing sets, and photogrammetric sets. The witness' duties include demonstrations to professional groups of the various articles sold by his employer. Prior to his present position, the witness was employed by the same corporation in Switzerland, where all its products are manufactured, and where he became familiar with the production and use of the finished products as well as every part included therein.

Plaintiffs' uncontradicted testimony shows that all of the articles in question are composed of optical glass, and that they are essential parts of the "T3 precision theodolite," an instrument used by engineers in surveying operations for determining, by angular measurements, the location of points both in vertical and horizontal planes.

The theodolite is comparable to a transit, which is also used in surveying operations, the distinction being that in a transit, the readings are recorded on a silver plate, while the theodolite gives optical readings on glass circles with angular readings graduated to 2 minutes of an arc, and ultimately adjusted to two-tenths of a second of an arc.

To obtain a reading with the use of the theodolite, the eye end of a telescopic tube, an integral part of the instrument, is sighted on the target to be defined. The particular angle desired is fixed by turning

the theodolite on an axis located in the center thereof, and "flipping" a glass prism, either to the right for a horizontal reading, or to the left for a vertical reading. A path of light (daylight), led into the instrument, is reflected on a mirror and by means of an optical train, consisting of a series of lenses and prisms, the light rays are reflected, enlarged, and deflected, and finally carried to a micrometer drum from which the reading is made, down to two-tenths of a second of an arc.

The articles under consideration are essential parts of the optical train, enabling the "T3 precision theodolite" to perform its functions. The plane parallel glass plate, exhibit 2, partly deflects the light rays to a prism, exhibit 1, which coincides the circle readings that travel to a prism, exhibit 3, where the light rays are deflected. The illuminating prism, exhibit 4, picks up the rays of light and reflects them to the micrometer drum, exhibit 5, on the outer rim of which has been etched graduation lines and numbers for recording the result adjusted to two-tenths of a second of an arc.

The "T3 precision theodolite" is chiefly used by the United States Coast and Geodetic Survey for precise triangulation. The instrument is also employed for "very precise work" in bridge triangulations and in the measurement of deformations in power dams. It has use, also, in manufacturing plants for precise tooling operations.

Plaintiffs' claims, urging classification either as lenses of the type provided for in paragraph 226, as modified, *supra*, or as certain kinds of glass contemplated by paragraphs 226 and 230 (c), *supra*, relate to classes of merchandise not dedicated to any particular purpose, but rather susceptible of a variety of uses. The articles in question are beyond the status of merchandise within any of those categories. These prisms and micrometer drums under consideration are indispensable parts of the "T3 theodolite," for which they are especially manufactured and in which they are exclusively used. The claims under said paragraphs 226, 230 (c), and 226, as modified, are therefore overruled.

Thus, our consideration is confined to the claim under the provision for "optical measuring * * * instruments * * * and parts of any of the foregoing; all the foregoing, finished or unfinished," in paragraph 228 (a) of the Tariff Act of 1930, carrying a duty assessment of 60 per centum ad valorem. That provision was construed in the case of *Clara M. Ferner* v. *United States*, 23 C. C. P. A. (Customs) 62, T. D. 47735. There, the merchandise consisted of measuring machines comprised of framework, plates, holders, and adjusting machinery for moving the objects to be measured past a scale of line measurements and under a microscope or microscopes which were integral and essential features of the devices. The machines had various uses, including the measuring of machine parts, tools, dies,

spectrographic plates, astronomical photographs, and also the measuring and comparing of fingerprints in crime detection.

After reviewing legislative hearings before committees of Congress prior to the enactment of the provision for optical measuring instruments in said paragraph 228 (a), the court said:

Regardless of the scope intended by the term "optical measuring * * * instruments" and without indicating a precise definition of that term, and without suggesting everything which Congress might have contemplated would be provided for thereby, we feel certain that one of the instruments it intended to include therein was an instrument by which measurements were made, such as those involved in the consideration of the instant appeal, wherein optical devices and optical principles are involved and essential in making such measurements. That a microscope is an optical instrument is not disputed, and that an optical function is performed by the use of optical instruments when the devices at bar are used cannot be seriously questioned. Therefore, in view of the legislative history and the context of the paragraph under consideration and related paragraphs, we are of the opinion that the term "optical measuring * * * instruments" in paragraph 228 (a) was intended to embrace instruments of the character of the ones represented by the exhibits at bar.

A distinguishing case where the provision for optical measuring instruments was held not to apply is *United States* v. *American Machine & Metals, Inc.*, 29 C. C. P. A. (Customs) 137, C. A. D. 183. In that case, the merchandise was found to be a mechanism used for determining the hardness of metals. In its operation, the device employed a commercial diamond indenter of a specific shape which was pressed into the metal to be tested at a predetermined load and at a predetermined rate of loading. The impression in the metal left by this operation was then measured by means of a microscope permanently attached to the article. Through such measurement and the record of the predetermined load and rate of loading, calculations were made through which the hardness of the metal was determined.

Excluding the instrument from classification under the provision for "optical measuring or optical testing instruments," the court reasoned as follows:

It therefore appears that, while an optical measurement is essential in the practical use of the article, that is only one of the essential elements. The article not only creates the indentation to be measured, but, to render the optical measurement of any value, the factors of the amount of load and rate of loading must be considered and weighed, and the making of the indentation and the loading and rate of loading are accomplished without the use of any optical instrument. Without the indentation in the metal and the recording of the predetermined load and rate of loading, the microscope would be useless as a measuring instrument. In our opinion an article cannot be classified as an optical measuring or optical testing instrument unless the dominant or primary use of the article lies in the employment of its optical features. Therefore, since it cannot be said that the dominant or primary use of the article here involved lies

in the employment of the microscope, we hold that such article is not an optical measuring or optical testing instrument classifiable under paragraph 228 (a).

In the case of *United States* v. *Bliss & Co. et al.*, 6 Ct. Cust. Appls. 433, T. D. 35980, the court had occasion to discuss the provision for optical instruments which appeared in paragraph 93, Tariff Act of 1913. In the course of its decision, the following pertinent comment was made:

The fact that light is the foundation of vision is doubtless the reason why the science of optics is said to relate not only to the organs of vision but to light itself and doubtless accounts for what we think is the fact, that in the common understanding of the term "optical" relates to the phenomena of both light and vision. They are inseparable, because light itself is "the sensation of which one becomes conscious through the optic nerve."

A brief reference to recognized authorities reveals the nature of a theodolite. Funk and Wagnalls New Standard Dictionary, 1942 edition, page 2498:

theodolite, *n*. 1. *Surv.* A portable instrument for measuring horizontal and (generally) vertical angles. It comprises a small telescope turning on a vertical axis through the center of a horizontal graduated circle, and also on a horizontal axis, by which it may be pointed at any elevation.

Webster's New International Dictionary, second edition, page 2619:

theodolite, *n. Surv.* An instrument for measuring horizontal, and usually also vertical, angles. It consists of a telescope mounted so as to swivel vertically in Y's secured to a revolvable table carrying a vernier for reading horizontal angles. There is usually a graduated arc or circle for altitudes. A horizontal compass is commonly included.

Encyclopaedia Britannica, volume 22, page 56:

THEODOLITE, a surveying instrument consisting of two graduated circles placed at right angles to each other, for the measurement of horizontal and vertical angles, a telescope, which turns on axes mounted centrically to the circles, and an alidade for each circle, which carries two or more verniers. The whole is supported by a pedestal resting on footscrews, which are also employed to level the instrument.

The significant phase of the above-quoted definitions is the inclusion in each that a telescope is an integral part, which, considered in conjunction with the prisms and micrometer drums in question, identifies most convincingly the basic character of a theodolite. That a telescope is an optical instrument is well known. The importance of lenses and prisms as they function with optical instruments is disclosed in the Dictionary of Tariff Information (issue of September 1924, at page 540), wherein it is stated:

Lenses and prisms are the primary constituents of optical instruments. Lenses are used for three purposes: (1) To concentrate and direct a ray of light (searchlight and automobile lenses); (2) to project a perfectly clear image on a sensitized plate (photography) or screen (motion pictures); (3) to magnify an image so that greater detail may be observed by the eye.

That the proper functioning of the T3 precision theodolite is completely dependent on a telescope with a series of lenses and prisms, lends much support to the conclusion that optical devices and optical principles are involved and essential in making the measurements taken by the instrument. Under the reasoning followed and the general principles set forth in the *Ferner*; *American Machine & Metals, Inc.*; and *Bliss & Co.* cases, *supra*, the T3 precision theodolite is an optical measuring instrument, as contemplated by paragraph 228 (a), *supra*.

The T3 precision theodolite is, therefore, a surveying instrument, as well as an optical measuring instrument. Each class of merchandise is specifically provided for in the Tariff Act of 1930. The provision for "surveying instruments" in paragraph 360 of the said act is a generic one that embraces a broad field and wide variety of instruments employed in surveying operations. It includes articles used in pure science, and also those used in applied science. *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, T. D. 43743.

The T3 precision theodolite, as a particular kind of surveying instrument whose dominant or primary use lies in the employment of optical features in measuring the location of points, in both horizontal and vertical planes, is removed from the general designation of "surveying instruments" in paragraph 360, *supra*, and is more specifically provided for under the provision for "optical measuring * * * instruments" in paragraph 228 (a), *supra*. Since the articles in question are essential parts of such an instrument, they are properly classifiable as parts of optical measuring instruments under said paragraph 228 (a), and dutiable at the rate of 60 per centum ad valorem, as claimed.

That claim in the protest is sustained. Judgment will be rendered accordingly.