(C.D. 3317)

METTLER INSTRUMENT CORPORATION v. UNITED STATES

United States Customs Court, First Division

(Decided February 28, 1968)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *Hadley S. King* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Charles P. Deem* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: This case concerns the importation of articles invoiced as "Reticles A4–7399" or "Reticles A4–7399b". They were assessed with duty at the rate of 42½ per centum ad valorem under the provisions of paragraph 218(a) of the Tariff Act of 1930, as modified by T.D. 52739 and supplemented by T.D. 52820, as scientific articles in chief value of glass.

Plaintiff makes the alternative claims that the articles are properly dutiable at 27½ per centum ad valorem as ruled or etched glass or manufactures of such glass under the provisions of paragraph 230(c) of the act, as modified, *supra*, or at 21 per centum ad valorem as manufactures of glass, wholly or in chief value, not specially provided for, under paragraph 230(d) of the act, as modified by T.D. 54108.

The modified provisions of the statute involved are set forth as follows:

Paragraph 218(a) of the Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820:

Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools, or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or 218(e), Tariff Act of 1930), finished or unfinished, wholly or in chief value of glass_____ 42½% ad val.

Paragraph 230(c), Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820:

Glass, ruled or etched in any manner, and manufactures of such glass, for photographic reproductions or engraving processes, or for measuring or recording purposes_____ 27½% ad val.

Paragraph 230(d), Tariff Act of 1930, as modified by T.D. 54108:

All glass, and manufactures of glass, or of which glass is the component of chief value, not specially provided for (except broken glass or glass waste fit only for remanufacture and pressed wares)_____ 21% ad val.

Plaintiff's exhibit 1 was received in evidence as a representative sample of the imported merchandise. It is a small circular piece of glass with minute markings in the center portion. The glass is mounted in a metal housing and the circumference of the entire article measures less than that of a dime.

The only witness to testify was Mr. Frederick C. Tobler, president of the plaintiff corporation. His duties range over the entire management of his company's organization, and he stated his familiarity with the manufacture, sale, and use of the imported merchandise. The uncontradicted testimony of this witness reveals the following: Reticles A4–7399 and A4–7399b (differing to only a minor degree in scale) are produced by a photographic process which consists of applying a photosensitive substance to a glass surface previously coated with chromium metal. This substance hardens when exposed to light and remains soluble where it is not exposed. When prepared, the glass is exposed to a master and the sections not exposed wash out leaving the chromium metal under the hardened exposed portion. The remaining photosensitive material is then removed with the result that a scale image appears on the glass surface as a coating of chrome metal. The rule or scale thus produced is approximately ½ inch long and contains 125 lines or markings. Plaintiff's exhibit 2 is the manufacturer's blueprint showing the scale or rule in blown-up proportions as it appears on the glass.

The imported articles, i.e., the ruled glass mounted in metal housings, are known as balance reticles and they are essential to and exclusively used with analytical balances, instruments for ascertaining very accurate weight or mass determinations. As depicted by plaintiff's exhibit 3 (a cross section diagram of an analytical balance in actual size), the reticle is affixed to the tail end of the balance beam. The balance itself works on a substitution principle meaning simply that mechanical weights ranging down to one gram are placed on one end of the balance beam, and the sample to be measured is placed at

the other end. When weighing a sample, its bulk is compensated for by removing the weights from the system which is possible down to the nearest gram. Fractional differences of less than a gram are then measured by use of the reticle which is calibrated to detect deflections in the beam from the rest of zero position to one-thousandth of a gram. For purposes of reading the reticle measurements, its scale image is projected forward and enlarged 30 times on a readout screen in front of the balance. The balances are used in laboratory control and production work, and in schools, hospitals, and various governmental agencies.

The reticle includes the metal mounting or housing which provides a fitting in the beam section of the balance. The glass is cut into a circle before it is ruled, but it is ruled before it is mounted. The parties openly stipulated that which was inherent in the collector's classification, that the reticles are in chief value of glass.

The issues presented by this case represent questions of law only since the material facts, as set forth by the sole witness, are not in dispute. Plaintiff takes the following positions with respect to those issues: (1) that the reticles by and in themselves do not perform a scientific function and are not, therefore, described within paragraph 218(a) as scientific articles; (2) that they are described within the provisions for ruled glass in paragraph 230(c); and (3) that even if enumerated within the provisions of both paragraphs, the provisions of paragraph 230(c) are more specific and control the classification. On the other hand, the Government argues that (1) the merchandise is properly embraced within the provisions for scientific articles in paragraph 218(a); (2) that the reticles are more than ruled glass or manufactures thereof provided for in paragraph 230(c); and that (3) if enumerated under both provisions, paragraph 218(a) is more specific and controls.

The provision for scientific articles in paragraph 218(a) has been held to apply to articles whose use may be either in the field of the pure or applied sciences. *United States* v. *Central Scientific Co.*, 21 CCPA 214, T.D. 46749. It has also been repeatedly construed to apply to articles which are used in or as parts of scientific instruments. Thus, in *United States* v. *The A. S. Aloe Co.*, 20 CCPA 319, T.D. 46111, blown glass articles known as centrifuge sedimentation tubes and specially constructed with extending rings at the top portion for use in centrifugal machines used by private doctors and hospitals for making urinary analyses were held dutiable under paragraph 218(a) as scientific articles; in *United States* v. *Central Scientific Co.*, *supra*, cover glasses, designed for and exclusively used in connection with slides to mount specimens for microscopic examinations, were found dutiable in paragraph 218(a) as scientific articles; and in *Henry Wild Surveying*

*Instrument Supply Co. of America et al.* v. *United States*, 32 Cust. Ct. 91, C.D. 1586 (reversing the outcome in *Same* v. *Same*, 30 Cust. Ct. 13, C.D. 1492), glass prisms and glass micrometer drums, identified as indispensable parts of certain surveying instruments, were likewise held to be dutiable as scientific articles within paragraph 218(a). In rendering its decision in the *Central Scientific Co.* case, *supra*, the court of appeals observed that,

while the cover glasses, in themselves, perform no scientific operation, they aid in the scientific purpose involved as fully as does a test tube, a retort, and many of the glass articles which are used by the scientists in chemistry, metallurgy, or biology, in arriving at his [sic] scientific deductions.

In the instant situation, there is no contention, much less a factual showing, controverting the presumption attending the collector's classification that the reticles are used with instruments which are chiefly used for scientific purposes. The fact that they do not perform a scientific function by themselves we find to be immaterial in view of the judicial authority cited above. Their enumeration within paragraph 218(a) is clear.

The next issue involves plaintiff's claim that the reticles are provided for under paragraph 230(c) as ruled glass or manufactures thereof, together with the defendant's charge that they are "more than" either description. It would appear to be beyond dispute that these imports of circular ruled glass, mounted in metal housings and known as balance reticles, are "more than" and do not fit the description of "ruled glass" as provided for in paragraph 230(c). However, the same conclusion can not be reached with respect to the provision in that paragraph for "manufactures of such glass * * * for measuring or recording purposes". Manufactures of a certain material is viewed as contemplating completed articles of commerce as opposed to the said material subsisting in an advanced or manufactured state. *H. Muehlstein & Co., Inc., F. L. Kraemer & Co.* v. *United States*, 44 CCPA 107, 109, C.A.D. 645, and cases cited therein. It also applies to merchandise which is either dedicated to an exclusive use or to a class of uses different from that which characterized the original component material. *United States*, (*Bellhouse Louver Windows, Party In Interest*) v. *Pittsburgh Plate Glass Co.*, 44 CCPA 110, C.A.D. 646; *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 CCPA 355, T.D. 43798. Furthermore, where used alone and without qualification, the expression "manufactures of", when applied to a specified material, ordinarily means merchandise wholly *or* in chief value of that material. *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T.D. 33529; *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T.D. 41257; *United States* v. *Guy B. Barham Co., etc.*, 26 CCPA 83, T.D. 49614. Applying

these principles of construction to the facts in this case, we find that the reticles are completed articles of commerce, manufactured of ruled glass and metal in which ruled glass is the component material of chief value, and that they are solely used in analytical balances for measuring weight or mass. As such, they are also enumerated under paragraph 230(c) as manufactures of ruled glass for measuring purposes.

The third and crux issue in this case involves a determination of which provision Congress intended the merchandise to be dutiable under where, as here, it fits within the enumeration of two separate provisions. Plaintiff's argument on this issue is grounded in the legislative history behind the enactment of paragraph 230(c), a provision new with the Tariff Act of 1930, and also in part upon judicial history, citing the decision of the Court of Customs Appeals in *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673, rendered on May 22, 1926. The *American Steel* case concerned importations of ruled photolithographic glass screens, known as half-tone screens. They had been assessed at 55 per centum ad valorem under paragraph 218 of the Tariff Act of 1922 as articles of glass, not specially provided for. They were held dutiable at only 20 per centum ad valorem as essential parts of cameras used for reproduction purposes under paragraph 1453. It is contended that this decision gave rise to the provisions of paragraph 230(c) in the 1930 Tariff Act and that the history behind that provision reveals a legislative intent to provide for merchandise such as is before us here.

The position of the defendant is that the provision for scientific articles in paragraph 218(a) is more specific with respect to this merchandise than the language in paragraph 230(c), citing the decisions of this court in the *Henry Wild* cases, *supra*, as support. In those cases, glass prisms and glass micrometer drums, parts of instruments used by the United States Coast and Geodetic Survey for precise triangulation, were initially held to be parts of optical measuring instruments under paragraph 228(a). On rehearing, with the use of additional testimony showing the predominant features of the instrument to be other than optical, the collector's original classification as scientific articles under paragraph 218(a) was upheld. In both cases, alternative claims by the plaintiff under paragraph 226 for the glass prisms and under paragraph 230(c) for the micrometer drums, which had been etched on the outer rim with graduation lines and numbers for measurement and recording purposes, were overruled, this court observing that those paragraphs generally relate to classes of merchandise susceptible to a variety of uses.

With respect to the provisions of paragraph 230(c), insofar as our decisions in the *Henry Wild* cases can be construed to mean that articles which are parts of other articles and exclusively used as such are not

susceptible to enumeration within that paragraph, we depart from and disavow that construction here and now; but insofar as those decisions, on the basis of statutory language alone, impliedly construed the provision for scientific articles in paragraph 218(a) to be more specific than that for manufactures of ruled or etched glass in paragraph 230(c), we find no error. It has often been recognized throughout the tariff statute that under the doctrine of relative specificity the term "articles" is generally considered a more specific designation than one for "manufacturers of". *International Expediters, Inc.* v. *United States*, 41 CCPA 156, C.A.D. 543; *D.N. & E. Walter & Co. et al.* v. *United States*, 36 Cust. Ct. 1, C.D. 1744.

However, unlike the situation in the *Henry Wild* cases, *supra*, where plaintiffs' claim for classification under paragraph 230(c) rested entirely upon an examination of statutory expression, we have been referred, in the present case, to the legislative history of that paragraph which allegedly contains a clear indication of congressional intent as to the scope and purpose of that enactment. To ascertain and then apply congressional intent is, of course, the foremost concern of the court. While recourse to legislative history is appropriate only where the statute is ambiguous or room for doubt as to its meaning exists, it is recognized that where separate tariff enumerations have applicability to the merchandise there is sufficient justification to seek the intent of Congress in legislative history. *C. J. Tower & Sons* v. *United States*, 44 CCPA 41, C.A.D. 634; *United States* v. *Mitsui & Co., Ltd.*, 29 CCPA 154, C.A.D. 185. This is so even though one provision may be viewed as more specific than the other. *United States* v. *E. DeGrandmont, Inc.*, 21 CCPA 17, T.D. 46345. As stated in the opinion of the Supreme Court in *United States et al.* v. *American Trucking Associations, Inc., et al.*, 310 U.S. 534:

\* \* \* When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, \* \* \*.

We, therefore, turn now to a consideration of legislative history. With the advent of congressional hearings prior to the enactment of the Tariff Act of 1930, the firm of Max Levy & Co. of Philadelphia, Pennsylvania, presented a brief before the House Ways and Means Committee on the subject of ruled glass. (See Tariff Readjustment 1929, Hearings Before the Committee on Ways and Means, House of Representatives, Seventieth Congress, Second Session, volume 2, schedule 2, pages 1451–1453.) Stating that it was the sole United States producer of accurate mechanically ruled glass, it went on to explain that it manufactures halftone screens, its chief product, for photographic reproduction work as well as scientific and technical measuring ruled glass devices used in astronomical work, studies in light

refractions, and in research laboratory operations of both private industry and the Federal Government. It also furnished universities and schools with ruled glass for use in the advancement of scientific research.

The decision of the court of appeals in the *American Steel* case, discussed, *supra*, and its adverse effect on the Levy Company, was specifically brought to the committee's attention.[1] The suggestion was also brought to the committee's attention that ruled glass might well be included within the existing provisions of paragraph 218 calling for biological, chemical, metallurgical, and pharmaceutical articles and utensils of all kinds, including all scientific articles, etc. However, to avoid future confusion in classification and to offer needed protection for domestically-produced ruled glass, the following special provision was proposed for insertion under paragraph 218 of the new act:

and all glass ruled or etched in any manner for photographic reproduction or engraving processes or measuring purposes

at a rate of 55 or 65 per centum ad valorem.

When the newly proposed tariff bill (H.R. 2667) was reported out of the House Ways and Means Committee, the following new provision was inserted, not under paragraph 218, but under paragraph 230 as paragraph 230(c):

Glass and manufactures of glass, ruled or etched in any manner for photographic reproductions or engraving processes, and glass cut to size and ruled for measuring purposes, 55 per centum ad valorem.

At the Senate hearing on H.R. 2667, a Subcommittee of the Committee on Finance heard the testimony of an importer of glass screens for photographic reproduction purposes who objected to their inclusion in proposed paragraph 230(c) at 55 per centum ad valorem. (Hearings Before a Subcommittee Of The Committee On Finance, United States Senate, Seventy-First Congress, First Session, volume 1, schedule 2, pages 648–657.) Nevertheless, after proposing its own amendment to the language of paragraph 230(c), in which the House receded, the Senate adopted its insertion into the Tariff Act of 1930 in its final form, to wit:

Glass ruled or etched in any manner, and manufactures of such glass, for photographic reproductions or engraving processes, or for measuring or recording purposes, 55 per centum ad valorem.

In a work entitled Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667) Subject to Conference, the Tariff Com-

---

[1] See volume entitled "Committee Reports and Conference Reports To Accompany H.R. 2667, 71st Congress, 1st & 2d Sessions", "Memorandum of Court Decisions Affecting Tariff Act of 1922 Prepared for Use of Committee on Ways and Means, 1929", page 11, wherein the same decision is discussed.

mission gave its explanation of the Senate revision of paragraph 230(c) as follows:

The phraseology of subparagraph (c), paragraph 230, as proposed by the Senate does not, in effect, change the classification of any commodities subject to duty under the corresponding provision as passed by the House. The phraseology was changed for the purpose of clarifying the intent with respect to the kinds of glass or articles of glass to be included within the paragraph. Under the bill as passed by the House it was thought possible that litigation might arise with respect to the term "manufactures of glass, ruled or etched in any manner." This might possibly be construed to include glassware which has been ruled or etched after the article has been formed, such as graduated cylinders and flasks which are commonly and commercially known as chemical and scientific glassware, and which are provided for in the proposed bill under paragraph 218(a). It is believed that such scientific glassware would be excluded from paragraph 230(c) as modified by the Senate, because the articles therein provided for would include only those produced from glass which has been previously ruled or etched in any manner.

From a review of the pertinent history surrounding the creation of paragraph 230(c) in the Tariff Act of 1930, it is quite apparent that Congress was made aware of the scientific character of many of the products of ruled or etched glass and their uses in the fields of physical research. Although prime concern was with the classification of ruled glass for photographic reproduction, the specific inclusion of language covering ruled or etched glass and manufactures thereof for measuring or recording purposes illustrates an intent to reach articles of a necessarily scientific nature. To construe the provision for scientific glassware in paragraph 218(a), which is similar in scope to language already existing in the 1922 Tariff Act, to include ruled glass articles and manufactures of ruled glass for measuring purposes would seemingly render this latter language bereft of substantive effect. Where the intent of the Congress as to the purpose and scope of a tariff provision is otherwise demonstrated, canons of construction, in this case the doctrine of relative specificity, must yield to that intent. *W. E. Sellers (Party In Interest, etc.)* v. *The Cronite Co., Inc.,* and *The Cronite Co., Inc.* v. *United States, W. E. Sellers (etc.), Party In Interest,* 45 CCPA 27, C.A.D. 668; *United States* v. *Clay Adams Co., Inc.,* 20 CCPA 285, T.D. 46078. We conclude that the reticles, fitting the description manufactures of ruled glass for measuring purposes, are to be dutiable under the provisions of paragraph 230(c) even though they be glass articles chiefly used for scientific purposes.

In view of this conclusion, plaintiff's alternative claim under the provisions of paragraph 230(d) is untenable. The protest is sustained and judgment will issue accordingly.