### KING ATHLETIC GOODS CO.
### v.
### UNITED STATES.
**C.D. 3633; Protest No. 65/14079–94733.**

United States Customs Court,
First Division.
Dec. 5, 1968.

Allerton deC. Tompkins, New York City, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Robert T. Richardson, New York City; trial attorney), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

This case involves the proper classification of football bladders, in chief value of rubber, which were imported from Japan. The merchandise was classified by the collector under item 734.72, Tariff Schedules of the United States, as parts of football equipment, other, and assessed with duty at the rate of 15 percent ad valorem. Plaintiff claims that the merchandise is properly classifiable under item 772.75 of the tariff schedules as inflatable articles, not specially provided for, of rubber or plas-

tics, dutiable at the rate of 12½ percent ad valorem.

Set forth below are the pertinent provisions of the tariff schedules:

*Classified under*:

Football, soccer, and polo equipment, and parts thereof:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

734.72　Other ................................15% ad val.

*Claimed under*:

772.75　Inflatable articles not specially provided for,
of rubber or plastics ....................12.5%　ad　val.

Also pertinent is General Interpretative Rule 10(ij) of the tariff schedules which reads:

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.* [Emphasis supplied.]

———◆———

■ The case has been submitted on a stipulation of facts under which it was agreed by the parties that the merchandise in question consists of football bladders in chief value of rubber "designed to be inserted in football cases for the purpose of being inflated * * * for use in the game of football." The parties have also agreed that the merchandise has no other known commercial use. In addition, it is undisputed that the football bladders are parts of football equipment. This being the case, plaintiff insists that General Interpretative Rule 10(ij) requires that the bladders be classified under item 772.75 as inflatable articles. Its argument is that item 772.75 is a specific use provision within the meaning of that rule and thus prevails over item 734.72—which is said to be an *eo nomine* provision covering the merchandise in question. We hold, however, that the merchandise was correctly classified under item 734.72 as parts of football equipment.

■■ It is to be observed first that under prior tariff acts football bladders were classified as manufactures of rubber (under paragraph 1537 of the Tariff Act of 1930 and paragraph 1439 of the Tariff Act of 1922). E. g., The May Co. v. United States, 64 Treas.Dec. 295, T.D. 46650 (1933); Jack Schaeffer, Inc. v. United States, 11 Cust.Ct. 78, C.D. 798 (1943). It is also to be noted that prior tariff acts did not provide for parts of footballs (or parts of football equipment), but only for footballs (and football equipment). See par. 1502, Tariff Act of 1930.[1] The situation was changed, however, with the enactment in 1962 of item 734.72 of the tariff schedules— which item for the first time included a provision for parts of football equipment. What is particularly significant here is that the legislative history of this item makes it clear that Congress intended specifically to change the classification of rubber football bladders from manufactures of rubber *to parts of football equipment dutiable at 15 per-*

1. This paragraph provided in part: "[F]ootballs * * * and all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), and all * * * other equipment, such as is ordinarily used in conjunction therewith, * * *."

*cent*. Thus, in referring to item 734.72, the explanatory note contained in the Tariff Classification Study published by the Tariff Commission on November 15, 1960, states (schedule 7, pp. 283–84):

Football, soccer, and polo equipment, and parts thereof, are provided for in items 734.70 and 734.72. The rate of 10 percent ad valorem is provided under item 734.70 for balls, polo mallets, and soccer guards. This is the rate now applicable to balls of material other than rubber and to the mallets and guards. Rubber balls for these games are now dutiable at the rate of 20 per cent ad valorem. *The rate of 15 percent ad valorem is provided for all other equipment and parts of equipment for these games. This is the rate now applicable to the articles dutiable in paragraph 1502. The provision involves small changes in duty on certain parts such as* football covers now dutiable as miscellaneous manufactures of leather at the rate of 10.5 percent ad valorem, and *football bladders dutiable as miscellaneous manufactures of rubber at the rate of 12.5 percent ad valorem.*[2] [Emphasis supplied.]

In addition, a widely used industrial classification system known as "Nomenclature for the Classification of Goods in Customs Tariffs" (usually referred to as the "Brussels Nomenclature") contains the following relevant language (Explanatory Notes to the Brussels Nomenclature 1955, vol. III, chapter 97, p. 1174):

97.06—Appliances, Apparatus, Accessories and Requisites for Gymnastics or Athletics, or for Sports and Outdoor Games (other than * * *).

This heading covers:

(1) Gymnasium and athletic equipment, e. g.:

   *    *    *    *    *    *

(2) Requisites for sports and games; these include:

Balls for various games (e. g.: —*football*, rugby and similar balls, *including bladders and covers for such balls;* * * *).[3] [Emphasis supplied.]

In view of the clear legislative intent evidenced in this case—that football bladders are to be classified as "parts of football equipment" dutiable at 15 percent—we need not determine the correctness of plaintiff's contentions that item 772.75 is a specific use provision within the meaning of General Interpretative Rule 10(ij), and that as such, it prevails over an *eo nomine* provision for the merchandise in question. For the rule that a use provision takes precedence over an *eo nomine* provision is merely a canon of construction for determining the intent of Congress. But where, as here, the intent of Congress concerning the purpose and scope of a tariff provision is otherwise clearly demonstrated, a canon of construction (or a general interpretative rule) must yield to that specific intent. W. E. Sellers v. Cronite Co., Inc., 45 CCPA 27, C.A.D. 668 (1957); Mettler Instrument Corp. v. United States, 60 Cust.Ct. 198, C.D. 3317 (1968).

The protest is overruled. Judgment will be entered to that effect.

2. The Tariff Classification Study has "the same standing as Summaries of Tariff Information which is recognized by the courts as authoritative for the purpose of resolving questions relating to the meaning and scope of terms appearing in tariff acts and in determining the intent of Congress." Rifkin Textiles Corp. v. United States, 54 CCPA 138, 141, C.A.D. 925 (1967).

3. Recent decisions of this court have recognized the importance of the "Brussels Nomenclature" in the arrangement of the revised 1962 tariff schedules. See e. g., Freni v. United States, Cust. Ct., 283 F.Supp. 89, 92–93, and cases cited at note 3, C.D. 3375 (1968).